Ronald Dale YEATTS, Petitioner–
Appellant,

v.

Ronald J. ANGELONE, Director, Vir-
ginia Department of Corrections,
Respondent–Appellee.

No. 98–19.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1998.

Decided Jan. 12, 1999.

**ARGUED:** Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellant. Pamela Anne Rumpz, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert E. Lee, Jr., Virginia Capital Representation Resource Center, Richmond, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Appellee.

Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.

Dismissed by published opinion. Judge WILKINS wrote the majority opinion, in which Judge LUTTIG joined. Judge HAMILTON wrote a separate opinion concurring in part and concurring in the judgment.

### OPINION

WILKINS, Circuit Judge:

 Ronald Dale Yeatts filed this petition for habeas corpus relief[1] from his Virginia conviction for capital murder and his resulting death sentence. *See* 28 U.S.C.A. § 2254 (West 1994).[2] The district court denied the relief sought. Yeatts now maintains that the state trial court violated his constitutional right to due process by failing to permit him to inform the jury that he would not be eligible for parole for 30 years if sentenced to life imprisonment and that his trial counsel was constitutionally ineffective for failing to adequately voir dire prospective members of the jury concerning their ability to consider a life sentence. Because we conclude that Yeatts has not made a substantial showing of the denial of a constitutional right, we deny Yeatts' request for a certificate of probable cause to appeal and dismiss.

### I.

On the afternoon of September 23, 1989, after ingesting alcohol, marijuana, and cocaine base, Yeatts and his friend Charles Michael Vernon decided to rob Ruby Meeks Dodson, a 70–year–old woman for whom Vernon previously had performed plumbing work. After gaining entry to Dodson's home on the pretense of having experienced problems with his automobile, Yeatts stabbed Dodson and slit her throat while Vernon searched her bedroom for money. Finding none, Vernon stole Dodson's pocketbook and fled with Yeatts. Dodson's body was discovered on the floor of her kitchen later that evening.

The investigation of Dodson's murder led law enforcement officials to Vernon, who implicated himself and Yeatts in the crime. Vernon agreed to testify against Yeatts in exchange for a 20–year sentence. In addition, Yeatts confessed to the crime, and physical evidence connected him to the killing.

---

1. Yeatts named Ronald J. Angelone, Director of the Virginia Department of Corrections, as Respondent in his petition. For ease of reference, we refer to Respondent as "the Commonwealth."

2. Because Yeatts' petition for a writ of habeas corpus was filed on June 30, 1995, prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, 110 Stat. 1214, amendments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA do not govern our resolution of this appeal. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2067–68, 138 L.Ed.2d 481 (1997). We have not decided whether the provisions contained in § 107 of the AEDPA apply to Virginia petitioners whose state habeas proceedings were decided after July 1, 1992. *See Bennett v. Angelone,* 92 F.3d 1336, 1342 (4th Cir. 1996). Yeatts' state habeas proceeding was filed in October 1992 and was finally decided by the Supreme Court of Virginia March 3, 1995. We need not consider the applicability of the provisions of § 107 of the AEDPA here because we conclude that habeas relief is inappropriate under the more lenient standards in effect prior to the AEDPA amendments. *See O'Dell v. Netherland,* 95 F.3d 1214, 1255 n. 36 (4th Cir.1996) (en banc), *aff'd,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

The state trial court conducted voir dire by separating the prospective jurors into groups of four to six individuals. For each group, the court conducted a general voir dire, and then the individual prospective jurors were questioned by the court and counsel. The state trial court asked questions to "death qualify" the prospective jurors. Although the words that the court used were not identical with respect to each prospective juror, the court proceeded through essentially the same colloquy with each. The court advised the prospective jurors that capital murder was punishable by death or life imprisonment. Then, the court asked three questions. It inquired whether each prospective juror possessed "any opinion, conscientious, religious, psychological, moral, or any other beliefs" that would prevent him from convicting someone of a crime punishable by death; whether the prospective juror held any such beliefs that would prevent him from imposing the death penalty if he believed based on the facts and circumstances that death was the appropriate sentence; and finally, whether the prospective juror would be able to consider voting to impose a sentence of life imprisonment if Yeatts were convicted of capital murder. *E.g.*, J.A. 19–20. After questioning by the prosecution, defense counsel questioned the prospective jurors individually. In addition to other questions, counsel asked each prospective juror death-qualifying questions in similar language. First, defense counsel inquired, "Do you believe that the death sentence is the only appropriate punishment for capital murder?" *E.g., id.* at 27. Next, defense counsel asked whether the prospective juror could consider all of the evidence and still impose a life sentence.

During the sentencing proceeding that followed Yeatts' convictions for capital murder and robbery, the prosecution elicited information concerning each of Yeatts' prior convictions—including the date, the sentence imposed, and his parole or probation status at the time of the commission of each prior offense. This testimony demonstrated that for nearly ten years—from March 3, 1980 when Yeatts was first convicted of burglary until four days before Dodson's murder—Yeatts was incarcerated, on parole, or on probation. In closing argument, the prose-

cution stressed Yeatts' criminal record, emphasizing that Yeatts had been given numerous opportunities to amend his behavior yet had demonstrated a pattern of consistent criminal activity. Yeatts requested that the state court instruct the jurors that in assessing his future dangerousness and in selecting an appropriate punishment they could consider that he would not be eligible for parole consideration for 30 years if the jury imposed a life sentence. The state court refused Yeatts' request.

During its deliberations, the jury queried the court concerning how many years Yeatts would be required to serve before becoming eligible for parole if he were given a life sentence; the court instructed, consistent with Virginia law, that the jury should not consider the question of parole. Although preserving his prior objection to the failure of the court to instruct the jury concerning his parole eligibility, Yeatts agreed that the proposed answer was a correct statement of Virginia law. The jury subsequently returned a sentence of death based upon a finding of future dangerousness.

Yeatts' convictions and sentences were affirmed on direct appeal, and the Supreme Court denied certiorari. *See Yeatts v. Commonwealth*, 242 Va. 121, 410 S.E.2d 254 (Va. 1991), *cert. denied*, 503 U.S. 946, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992). Yeatts subsequently filed a petition for habeas corpus relief in state court in October 1992 raising a plethora of issues, including several claims of ineffective assistance of counsel. The Commonwealth opposed the petition, filing affidavits from Yeatts' trial counsel. The state habeas court dismissed Yeatts' petition without conducting an evidentiary hearing. The Supreme Court of Virginia granted Yeatts' petition for appeal on two issues, but denied relief. *See Yeatts v. Murray*, 249 Va. 285, 455 S.E.2d 18, 20, 22 (Va.1995).

Thereafter, Yeatts filed this § 2254 petition, claiming in pertinent part that the state trial court erred in refusing to permit him to inform the jury of his parole eligibility during the sentencing phase of his trial and that his trial counsel was ineffective for failing to adequately death qualify the prospective ju-

rors during voir dire. The district court dismissed Yeatts' petition, finding it to be without merit, and denied Yeatts' request for a certificate of probable cause to appeal.

## II.

Yeatts first contends that the state trial court deprived him of due process by refusing to permit him to inform the jury that, taking into account the 20–year sentence he received for the robbery, he would not be eligible for parole for 30 years if he were given a life sentence for Dodson's murder. *See Clemons v. Mississippi*, 494 U.S. 738, 746, 110 S.Ct. 1441, 108 L.Ed.2d 725(1990) (recognizing that "[c]apital sentencing proceedings must . . . satisfy the dictates of the Due Process Clause"). Yeatts maintains that the Due Process Clause of the Fourteenth Amendment mandates that he be permitted to respond to evidence and argument offered by the prosecution and that the refusal of the trial court to inform the jury of his parole eligibility deprived him of his due process right to respond to the Commonwealth's evidence and argument concerning his prior criminal record.

■■■ The Commonwealth first asserts that we cannot consider this claim because it is procedurally defaulted. Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. *See Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Such a rule is adequate if it is regularly or consistently applied by the state court, *see Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," *Ake v. Oklahoma*, 470

U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

■■■ The Commonwealth explains that at trial and on direct appeal, Yeatts claimed only that he should have been permitted to present his parole eligibility as mitigating evidence required by the Eighth Amendment in reliance on *Mills v. Maryland*, 486 U.S. 367, 374–75, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (recognizing that the sentencer in a capital proceeding may not be prevented from taking into consideration, as a mitigating factor, any relevant circumstance, including any facet of the accused's character or record and any of the circumstances of the offense that the accused offers as a justification for a sentence less than death). The Commonwealth notes that Yeatts did not raise any due process claim relating to the presentation of his parole eligibility to the jury either on direct appeal or during his state habeas proceedings. Consequently, the Commonwealth continues, Yeatts has failed to exhaust this claim and this court should treat it as procedurally defaulted since the Commonwealth would not entertain the issue at this juncture. *See Gray v. Netherland*, 518 U.S. 152, 161–62, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). Although the Commonwealth correctly analyzes the procedural default issue, Yeatts asserts that the Commonwealth did not argue that he had procedurally defaulted his parole eligibility claim before the district court.[3] Therefore, Yeatts argues, this court should consider his due process claim on the merits.

■■■ The rule that a federal habeas court will not consider a claim that was rejected by a state court on an adequate and independent state–law basis absent special circumstances is not a jurisdictional one. *See Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 480,

---

3. At oral argument, the Commonwealth asserted that it, in fact, had argued in the district court that Yeatts had procedurally defaulted this issue. The portion of the record to which the Commonwealth pointed, however, plainly does not demonstrate that the Commonwealth raised the issue of whether Yeatts procedurally defaulted his argument that the failure of the state trial court to inform the jurors of his parole eligibility deprived him of due process. The Commonwealth maintained:

> Finally, petitioner's complaint that the Commonwealth violated his due process rights by introducing evidence concerning his previous conduct while on parole is procedurally barred. On direct appeal, Yeatts did not include this as part of his parole argument.

J.A. 836. This portion of the Commonwealth's argument does not amount to an assertion that Yeatts defaulted his parole eligibility claim.

139 L.Ed.2d 444 (1997). A federal habeas court thus possesses the jurisdiction to consider a petitioner's constitutional claims that have been procedurally defaulted. *See id.* But, because a state-court ruling that is based upon an adequate and independent state-law ground would dictate the denial of federal relief irrespective of the correctness of any ruling by the state court on the federal question, concerns of comity and federalism counsel in favor of a federal habeas court declining to reach the merits of the federal claim. *See Coleman v. Thompson,* 501 U.S. 722, 730–31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038. As such, the issue of procedural default generally is an affirmative defense that the state must plead in order to press the defense thereafter. *See Trest,* 118 S.Ct. at 480 (explaining that "procedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter" (internal quotation marks & alteration omitted)); *Gray,* 518 U.S. at 165–66, 116 S.Ct. 2074 (recognizing that "procedural default is an affirmative defense for the Commonwealth" that it must "raise ... as a defense[ ] or lose the right to assert ... thereafter").[4] Accordingly, the failure of the Commonwealth to raise the issue of Yeatts' procedural default of his parole eligibility claim waived its right to pursue the issue before this court.

■ Nevertheless, in the presence of overriding interests of comity and judicial efficiency that transcend the interests of the parties, a federal habeas court may, in its discretion, deny federal habeas relief on the basis of issues that were not preserved or presented properly by a state. *See Granberry v. Greer,* 481 U.S. 129, 131–36, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (holding that based on concerns of comity and judicial economy, a federal habeas court, within its discretion, may raise an exhaustion defense that was not raised in the district court). Those concerns support the conclusion that a federal habeas court possesses the authority to address, in its discretion, whether there exists an unexcused adequate and independent state-law ground for a denial of relief from a challenged conviction or sentence.

Comity is a two-way street, requiring a delicate balancing of sometimes-competing state and federal concerns. *See Hardiman v. Reynolds,* 971 F.2d 500, 503 (10th Cir. 1992). On occasion, interests of comity may counsel a federal habeas court to ignore the failure of a state to assert a defense founded upon procedural default. *See id.* Furthermore, often—though by no means always— judicial efficiency is advanced when a federal habeas court addresses an issue of procedural default despite the failure of the state to preserve the issue properly. For example, a federal court may find that a petitioner obviously has procedurally defaulted an issue and may avoid a decision on a complex federal question presented by that issue by denying relief on the basis of the adequate and independent state-law ground despite the failure of a state to assert a procedural bar. In such a situation, a federal court would be justified in considering the issue of procedural default and denying the petition on that basis. Conversely, on occasion the determination of whether a petitioner has defaulted his claims will present difficult issues of state law that are not readily susceptible to decision by a federal court, while the claim advanced by the petitioner patently is without merit. In such a situation, a federal habeas court would not be justified in considering the procedural default issue. *See id.*

■ Our conclusion that a federal habeas court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense comports with the unanimous decisions of the other courts of appeals that have considered this question. The First, Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits all agree that a

---

4. To the extent our decisions in *Nickerson v. Lee,* 971 F.2d 1125, 1128 n.2 (4th Cir.1992), *Meadows v. Legursky,* 904 F.2d 903, 907 (4th Cir.1990) (en banc), and *Titcomb v. Virginia,* 869 F.2d 780, 783 (4th Cir.1989), hold that a state may press a habeas petitioner's procedural default despite its failure to raise that issue properly before the district court when relevant state court decisions are included in the record, our decisions have been superseded by the opinions of the Supreme Court in *Trest,* 118 S.Ct. at 480, and *Gray,* 518 U.S. at 165–66, 116 S.Ct. 2074.

federal court, in the exercise of its judicial discretion, may address procedural default despite the failure of the state to preserve or present the issue properly. *See Windham v. Merkle,* 163 F.3d 1092, 1099–1101 (9th Cir. 1998); *Magouirk v. Phillips,* 144 F.3d 348, 357–58 (5th Cir.1998); *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1172, 140 L.Ed.2d 182 (1998); *Esslinger v. Davis,* 44 F.3d 1515, 1524–25 (11th Cir.1995); *Washington v. James,* 996 F.2d 1442, 1448 (2d Cir.1993); *Hardiman v. Reynolds,* 971 F.2d 500, 501–05 (10th Cir.1992); *Hull v. Freeman,* 932 F.2d 159, 164 n. 4 (3d Cir.1991), *overruled on other grounds by Caswell v. Ryan,* 953 F.2d 853 (3d Cir.1992); *Burgin v. Broglin,* 900 F.2d 990, 997–98 (7th Cir.1990); *see also Bannister v. Delo,* 100 F.3d 610, 619 (8th Cir.1996) (noting that district court rejected petitioner's argument that the circuit court improperly raised procedural default sua sponte in a prior appeal).

A federal habeas court, in determining whether it should exercise its discretion to notice a petitioner's procedural default, should be guided by the interests of comity and judicial efficiency that support the consideration of this issue despite the failure of the state to preserve or present the issue properly. The "exercise of . . . discretion should not be automatic, but must in every case be informed by those factors relevant to balancing the federal interests in comity and judicial economy against the petitioner's substantial interest in justice." *Magouirk,* 144 F.3d at 360. Additionally, "the court should consider whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal." *Id.* Further, the court should take into consideration whether the failure of the state to raise the matter of procedural default in a timely manner was intentional or inadvertent, and when a state intentionally has declined to pursue the defense for strategic reasons, the court should be circumspect in addressing the issue. *See id.* at 359–60.

Here, we conclude that an exercise of our authority to notice a procedural default by Yeatts is appropriate. It is clear from the record that the failure of the Commonwealth to raise the issue of procedural default in the district court was unintentional; indeed, as noted above, the Commonwealth argued before us its belief that it had raised the issue. And, no additional hearing or argument is required given that the parties thoroughly briefed and argued the procedural default issue before this court and Yeatts has suggested no excuse for his default. *Cf. Hardiman,* 971 F.2d at 505 (holding that district court erred in dismissing petition on the basis of procedural default, which was raised sua sponte, without providing an opportunity to the petitioner to respond); *see also Gilbert v. Moore,* 134 F.3d 642, 656 n. 10 (4th Cir.) (en banc) (holding that this court will not consider whether cause and prejudice or a miscarriage of justice exist to excuse a default when the petitioner fails to offer any), *cert. denied,* — U.S. —, 119 S.Ct. 103, 142 L.Ed.2d 82 (1998). Moreover, judicial economy strongly favors a disposition on the ground of procedural default: Yeatts' procedural default is obvious because he did not raise—either on direct appeal or in his state habeas petition—any due process argument relating to the failure of the state trial court to inform the jury of his parole eligibility and because any attempt on his part to raise this issue in state court now would result in a determination that the issue has been procedurally defaulted. *See Gray,* 518 U.S. at 161–62, 116 S.Ct. 2074; Va.Code Ann. §§ 8.01–654 to –654.1 (Michie Supp.1998). Accordingly, we hold Yeatts' argument that the state trial court violated his right to due process by failing to inform the jury of his parole eligibility is procedurally defaulted.

## III.

### A.

Yeatts next argues that he was denied his Sixth Amendment right to the effective assistance of counsel by the failure of his trial counsel to conduct a sufficient voir dire to determine whether prospective jurors would consider mitigating circumstances in determining his sentence. The Commonwealth asserts that consideration of this claim is

barred because Yeatts defaulted the issue by failing to raise it in his appeal to the Supreme Court of Virginia. The Commonwealth explains that on appeal from the denial of Yeatts' petition for habeas corpus in state court, Yeatts' only relevant assignment of error provided that "[t]he trial court erred by dismissing [Yeatts'] petition for writ of habeas corpus without ordering an evidentiary hearing as to his allegations of ineffective assistance of counsel." J.A. 675. The Supreme Court of Virginia held that "[t]his assignment of error only challenges the alleged procedural failure to order an evidentiary hearing; it does not challenge, with reasonable certainty, the habeas court's substantive ruling on the merits of the ineffective assistance claims." *Yeatts*, 455 S.E.2d at 22. The court therefore held that Yeatts had failed to comply with Supreme Court of Virginia Rule 5:17(c), barring consideration of the merits of his allegations that counsel rendered constitutionally ineffective assistance. *See id.* at 21–22.

Yeatts acknowledges that because the Supreme Court of Virginia held this claim to be procedurally defaulted, a federal habeas court cannot consider the claim absent cause and prejudice or a miscarriage of justice if the basis upon which the state court ruled is an adequate and independent state procedural rule. *See Harris*, 489 U.S. at 262, 109 S.Ct. 1038. Yeatts contends, however, that the procedural rule relied upon by the Supreme Court of Virginia is not adequate to foreclose federal habeas review because the rule had not been applied regularly or consistently on similar facts prior to its application to him and thus that he could not have known the assignment of error was insufficient. In support of this claim, Yeatts presented documentation from five cases which he argued demonstrated that the Supreme Court of Virginia had reviewed underlying claims of ineffective assistance of counsel despite the petitioners' having raised only assignments of error comparable to the one made by Yeatts. After examining this material, the magistrate judge concluded that Rule 5:17(c) was not adequate as applied to Yeatts. The magistrate judge ruled that although the Commonwealth cited cases in which Rule 5:17(c) had been applied strictly, there was no decision of the Supreme Court of Virginia placing Yeatts and similarly situated petitioners on notice that a more specific assignment of error was needed. Further, the magistrate judge concluded that the cases to which Yeatts pointed might have led reasonable counsel to conclude that the assignment of error Yeatts made was sufficient to ensure review of the underlying merits. The district court adopted the report and recommendation of the magistrate judge.

 The Commonwealth argues that the district court erred in concluding that the finding of procedural default by the Supreme Court of Virginia is not adequate to foreclose federal habeas corpus review because Rule 5:17(c) has been "consistently or regularly applied." *Johnson*, 486 U.S. at 587, 108 S.Ct. 1981.[5] Consistent or regular application of a

---

5. Yeatts asserts that we should not consider whether Rule 5:17(c) is adequate to foreclose habeas review because the Commonwealth did not object to the magistrate judge's report. *See Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); Fed.R.Civ.P. 72(b). The Federal Magistrates Act provides that "[w]ithin ten days after being served with a copy[ of the magistrate judge's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C.A. § 636(b)(1) (West 1993). Likewise, Rule 72(b) of the Federal Rules of Civil Procedure provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Although the language of the statute and the rule is permissive, "[i]f a party exercises his option not to file objections, . . . he also chooses to waive his appeal. In this circuit, as in others, 'a party "may" file objections within ten days or he may not, as he chooses, but he "shall" do so if he wishes further consideration.' " *Wells v. Shriners Hosp.*, 109 F.3d 198, 199 (4th Cir. 1997) (quoting *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980)).

Although it is well settled that a party who does not prevail before the magistrate judge must object to his report, this court has held that when the state is the prevailing party in a habeas corpus proceeding, it does not waive the right to later raise a procedural bar by failing to object to the recommendation of the magistrate judge. *See Meadows v. Legursky*, 904 F.2d 903, 907 (4th Cir.1990) (en banc). Consequently, we conclude that the Commonwealth did not waive its argument that Yeatts procedurally defaulted his ineffective assistance of counsel claim by failing to object to the magistrate judge's report.

state rule of procedural default does not require that the state court show an "undeviating adherence to such rule admitting of *no* exception," *Wise v. Williams*, 982 F.2d 142, 143 (4th Cir.1992) (internal quotation marks omitted), when the state procedural rule has, as "a general rule, . . . been applied in the vast majority of cases," *Plath v. Moore*, 130 F.3d 595, 602 (4th Cir.1997) (internal quotation marks omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 1854, 140 L.Ed.2d 1102 (1998). But, "[i]n any given case, . . . the sufficiency of such a rule to limit all review of a constitutional claim itself depends upon the timely exercise of the local power to set procedure." *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). State procedural requirements that are adopted after the fact are inadequate to foreclose federal habeas review if the defendant "could not be 'deemed to have been apprised of its existence' " at the relevant time. *Id.* (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)); *see Meadows v. Legursky*, 904 F.2d 903, 907 & n. 3 (4th Cir.1990) (en banc) (explaining that decisions applying a state rule after the time for compliance with the rule has past are irrelevant in determining whether the rule was consistently applied at the critical time).

Rule 5:17(c) unambiguously directs that a petition for appeal "list the specific errors in the rulings below upon which the appellant intends to rely" and explains that "[o]nly errors assigned in the petition for appeal will be noticed by" the court. The Supreme Court of Virginia had applied this rule numerous times prior to the date Yeatts filed his petition for appeal to refuse to address issues that were not preserved properly with specific assignments of error. *See, e.g., Stoney Creek Resort, Inc. v. Newman*, 240 Va. 461, 397 S.E.2d 878, 880 n. 2 (Va. 1990); *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 368 S.E.2d 268, 285–86 (Va.1988). Because the only relevant error Yeatts listed in his petition for appeal to the Supreme Court of Virginia from his state habeas proceedings concerned the denial of his request for a hearing, and because he did not list any errors relating to his substantive claims of ineffective assistance of counsel, Rule 5:17(c)

obviously prevented the appellate court from reaching the merits of the substantive ineffective assistance of counsel claims. Although the Supreme Court of Virginia previously had not applied Rule 5:17(c) to facts identical to those presented by Yeatts' petition, it is well settled that an unambiguous court rule is necessarily "firmly established." *See O'Dell v. Netherland*, 95 F.3d 1214, 1241 (4th Cir.1996), *aff'd*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351(1997).

Furthermore, none of the state court decisions to which Yeatts points and on which the magistrate judge relied might have led reasonable counsel to conclude the assignment of error Yeatts made was adequate under Rule 5:17(c) to preserve all of his ineffective assistance claims. Yeatts directs our attention to *Arey v. Peyton*, 209 Va. 370, 164 S.E.2d 691 (Va.1968), *Eaton v. Murray*, Record No. 931146 (Va. Jan. 13, 1994) (unpublished), *Washington v. Murray*, Record No. 870281 (Va. Feb. 26, 1988) (unpublished), *Pope v. Thompson*, Record No. 891430 (Va. Feb. 23, 1990) (unpublished), and *Saunders v. Warden*, Record No. 931793 (Va. June 14, 1994), asserting that in each of these cases the Supreme Court of Virginia reached the merits of substantive issues when the assignments of error listed were no more specific than his own. However, it is impossible to conclude that in any of these cases—with the possible exception of *Arey*—the Supreme Court of Virginia actually addressed the underlying issue, as Yeatts maintains, rather than the general issues presented in the listed assignment of error. As such, these decisions could not have misled counsel concerning the requirements of Rule 5:17(c). In *Arey*, after rejecting the petitioner's argument that a state habeas court improperly denied his request for an evidentiary hearing, the Supreme Court of Virginia proceeded to address other ineffective assistance of counsel arguments advanced by the petitioner. *See Arey*, 164 S.E.2d at 694–96. Because the court initially indicated that "[t]he question in this case is whether the court below erred in not allowing Arey . . . a full evidentiary hearing before denying and dismissing his petition for a writ of habeas corpus," the case suggests—though it is by

no means clear—that the court addressed the underlying allegations of ineffective assistance of counsel when the petitioner assigned error only to the denial of an evidentiary hearing. *Id.* at 692. Nevertheless, this lone decision cannot support a determination that Rule 5:17(c) has been applied inconsistently and thus is inadequate to foreclose our review of the substantive ineffective assistance of counsel issues. *See Wise,* 982 F.2d at 143 (explaining that a state rule of procedural default maybe adequate despite exceptions to its application).

### B.

 Even if Rule 5:17(c) were not adequate to foreclose federal habeas review, we nevertheless would decide that Yeatts is not entitled to relief. Yeatts maintains that he was deprived of the effective assistance of counsel by his attorneys' failure to conduct a voir dire adequate to death qualify prospective jurors. To prevail on a claim of ineffective assistance of counsel, Yeatts must demonstrate that his attorneys' "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *see also Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)(holding that in determining the prejudice prong of *Strickland,* court must focus on "whether the result of the proceeding was fundamentally unfair or unreliable" as well as on whether the outcome of the proceeding would be changed). Review of counsel's performance is "highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. And, competency is measured against what an objectively reasonable attorney would have done under the circumstances. *Id.* at 687–88, 104 S.Ct. 2052. Counsel is afforded a strong presumption that his performance was within the extremely wide range of professionally competent assistance. *See id.* at 689, 104 S.Ct. 2052.

 The Sixth and Fourteenth Amendments "guarantee[ ] a defendant on trial for his life the right to an impartial jury." *Morgan v. Illinois,* 504 U.S. 719, 728, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). And, "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment … is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)) (alteration in original). "[A] juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Id.* Likewise, "[a] juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do"; such a juror is not impartial and should be removed for cause. *Id.* at 729, 112 S.Ct. 2222. A corollary of the right to an impartial jury is the requirement of a voir dire sufficient to permit identification of unqualified jurors because without an adequate voir dire, a trial judge will not be able to remove unqualified jurors and the defendant will not be able to exercise challenges for cause. *See id.* at 729–30, 112 S.Ct. 2222. Thus, a capital defendant must be allowed on voir dire to ascertain whether prospective jurors are unalterably in favor of the death penalty in every case, regardless of the circumstances, rendering them unable to perform their duties in accordance with the law. *See id.* at 735–36, 112 S.Ct. 2222. Questions directed simply to whether a juror can be fair, or follow the law, are insufficient. *See id.* at 734–36, 112 S.Ct. 2222.

Yeatts contends that defense counsel's voir dire questions concerning the capital sentencing scheme in Virginia were inadequate to allow counsel to discern whether the jurors would be able to follow their instructions. Yeatts maintains that although the jurors were asked whether they felt the death penalty was warranted as a punishment for every capital murder, counsel did not explain to the jurors that the death penalty may not be imposed in Virginia until the jury has convicted the defendant of capital

murder and unanimously found an aggravating factor. Thus, Yeatts asserts that counsel should have informed the jurors of this fact and asked whether the jurors could consider a sentence of less than death once they returned a guilty verdict and found an aggravating factor. Only if this information is obtained from the jurors, Yeatts argues, is sufficient information available for the court and counsel to properly evaluate challenges for cause and exercise peremptory strikes. We disagree.

In *Mackall v. Angelone,* 131 F.3d 442, 450–51 (4th Cir.1997) (enbanc), *cert. denied,* —— U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998), this court addressed the constitutional sufficiency of voir dire indistinguishable from that challenged as inadequate here; the state trial court asked prospective jurors the following questions relating to the death penalty:

Do you have any opinion such as to prevent any of you from convicting anyone of an offense punishable with death?

. . . .

If you were to find the defendant guilty of capital murder, is there any juror who could never vote to impose the death penalty or would refuse to even consider its imposition in this case?

. . . .

... If you were to sit as a juror in this case and the jury were to convict the defendant of capital murder, would you also be able to consider voting for a sentence less than death?

*Id.* at 451. No questions concerning aggravating factors were asked. This court held:

These questions focus on the relevant circumstance of whether a prospective juror entertains opinions on capital punishment

that would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath and are adequate to identify those who would automatically vote for the death penalty. Consequently, we conclude that the voir dire conducted by the state trial court did not violate [the petitioner's] Sixth or Fourteenth Amendment rights.

*Id.*

Because Yeatts' prospective jurors were asked questions during voir dire that were virtually identical to those deemed constitutionally adequate to ensure a fair and impartial jury in *Mackall,* Yeatts' claim that he was denied effective assistance of counsel must fail. Yeatts cannot demonstrate that counsel acted unreasonably in failing to ask prospective jurors questions other than those this court has held sufficient to permit a meaningful determination of possible bias on the part of the jurors. Further, he is unable to demonstrate that he suffered any prejudice as a result of voir dire that was constitutionally adequate.

IV.

We conclude that Yeatts has failed to make a substantial showing of the denial of a constitutional right.[6] Therefore, we deny Yeatts a certificate of probable cause to appeal and dismiss.

*DISMISSED.*

HAMILTON, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the opinion of the court except Part II that concludes that Yeatts' claim that the trial court deprived him of due process by refusing to permit him to inform the jury that, taking into account the twenty-year

---

**6.** We need not decide whether Yeatts properly should have requested a certificate of probable cause to appeal or for certificate of appealability because Yeatts fails to satisfy either standard. *Compare Lozada v. Deeds,* 498 U.S. 430, 431–32, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (per curiam) (explaining that to warrant the grant of a certificate of probable cause to appeal, a habeas petitioner must "make a substantial showing of the denial of [a] federal right" and that to satisfy this showing, the petitioner "must demonstrate that the issues are debatable among jurists of

reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further" (alterations in original)(internal quotation marks omitted)), *with Murphy v. Netherland,* 116 F.3d 97, 101 (4th Cir.) (denying certificate of appealability under 28 U.S.C.A. § 2253 (West Supp.1998) in habeas corpus action seeking relief from death sentence when petitioner failed to make a substantial showing of the denial of a constitutional right), *cert. denied,* —— U.S. ——, 118 S.Ct. 26, 138 L.Ed.2d 1050 (1997).

sentence he received for the robbery conviction, he would not be eligible for parole for thirty years if he were given a life sentence for Dodson's murder is procedurally defaulted. In my view, there was no procedural default because the Commonwealth waived this affirmative defense by failing to plead it in the district court. However, because I believe that Yeatts' claim is barred by the non-retroactivity principle announced in *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that a new rule of constitutional criminal procedure is not applicable to cases that became final before the new rule was announced), a defense pled by the Commonwealth in the district court, *see* (J.A. 794–97), I concur in the court's judgment.