**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-7537**

LARRY HAYES,

                Petitioner - Appellant,

   v.

MARVIN PLUMLEY,

                Respondent - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Thomas E. Johnston, Chief District Judge. (2:15-cv-15636)

Argued: May 8, 2018                 Decided: July 3, 2018

Before KING, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge King and Judge Agee joined.

**ARGUED:** Ryan Swindall, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Zachary Aaron Viglianco, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF:** Thomas V. Burch, Taryn P. Winston, Third-Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Patrick Morrisey, Attorney General, Shannon Frederick Kiser, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA,

Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Larry Hayes is serving a 40-year prison term in West Virginia for child abuse by a parent, guardian, or custodian resulting in death. A jury convicted Hayes after his girlfriend's 18-month-old daughter fell unconscious while under his care and died several days later. Hayes seeks federal habeas corpus relief under 28 U.S.C. § 2254 on two grounds. First, he claims that he was convicted on the basis of an involuntary statement to law enforcement, in violation of due process. Second, he argues that his trial attorney was ineffective for failing to cross-examine the State's medical expert as to whether he had completed a nationally accredited fellowship in forensic pathology, as required by state statute for employees of the coroner who perform autopsies. The district court declined to grant relief, but certified these issues for appeal. We find no error in the district court's judgment dismissing the petition, and thus affirm.

## I.

### A.

On September 30, 2010, Hayes was babysitting his girlfriend's 18-month-old daughter, R.M., while his girlfriend, Meredith Bush, was at work. Although the child had been her usual self that morning, by the time Hayes arrived to pick Bush up from work, R.M. was slumped over in her car seat and unresponsive. The child was taken by EMTs to the hospital, where she was placed on a ventilator and eventually declared brain dead due to a skull fracture. R.M. was then removed from the ventilator, and died shortly thereafter.

3

On October 4, 2010, the day after R.M.'s death, Hayes was taken to the police station, where he signed a valid *Miranda* waiver before being interviewed by detectives in the station's kitchen. At first, Hayes denied any knowledge of what happened to the child on the day of her death. The only incident of which he was aware, he told the detectives, was a fall from a bottom step several days before the events of September 30. The detectives repeatedly questioned that account, and after approximately 90 minutes, Hayes changed his story, now claiming that R.M.'s injuries were the result of an accident on September 30, when he fell down the stairs while holding the child and then landed on top of her.

Hayes was indicted for child abuse by a parent, guardian, or custodian resulting in death, *see* W. Va. Code § 61-8D-2a (2010), and tried before the Kanawha County Circuit Court. Hayes objected to admission of his statement about the alleged accident on September 30, arguing that it was involuntary and thus inadmissible under the Due Process Clause. After a two-day suppression hearing, the trial court rejected that claim, and Hayes's statement was admitted. The parties agreed, however, that the statement was not to be taken as true. Hayes's defense at trial was that an earlier injury to the child's head – perhaps sustained when she fell off a step the week before she fell unconscious – caused a posttraumatic seizure while Hayes was babysitting on September 30. The State introduced Hayes's statement to show that he had given a prior account inconsistent with that defense, and argued that R.M.'s injuries were not caused by an accidental fall of any kind but instead by child abuse at Hayes's hands on September 30.

4

Both parties proffered testimony in support of their theories. The State called R.M.'s mother, Meredith Bush, who testified that her daughter had been happy and well on the morning of September 30, when Bush went to work. Bush corroborated Hayes's claim that R.M. had fallen from the bottom step of the stairs in her home on September 24, about a week before losing consciousness. But according to Bush, R.M. had fallen backward, not onto her head, and had shown no signs of a head injury at the time or in the days leading up to September 30.

The State also called Dr. Allen Mock, then employed as a deputy at the West Virginia Office of the Chief Medical Examiner. Mock testified that R.M.'s autopsy, which he performed, revealed multiple bruises on the child's scalp and a swollen and hemorrhaging brain. Mock focused on a five-inch skull fracture with, he opined, no evidence of healing. According to Mock, it would have taken significant force, typical of a "high energy motor vehicle accident," to cause the wound. The September 24 fall from a step on which Hayes was relying, he explained, would have been unlikely to produce that level of damage. And because the fracture did not show signs of healing, it likely would have occurred nearer in time to the September 30 hospital admission. In Mock's opinion, R.M.'s death was caused by blunt force injuries to the head sustained on September 30 as a result of child abuse.

The State also presented testimony from Dr. Manuel Caceres, the pediatrician who cared for R.M. when she was admitted to the hospital, recognized by the trial court as an expert in pediatric intensive care. Caceres agreed with Mock that R.M.'s injuries were too severe to have been caused by an accidental fall, whether from the first step (Hayes's

5

trial theory) or while being held in Hayes's arms (as per his statement to the detectives). Like Mock, he believed that R.M.'s fracture was sufficiently acute when examined that it must have been sustained more recently than September 24. And, Caceres opined, the defense theory that R.M.'s death could have been a delayed reaction to the September 24 fall was inconsistent with the medical evidence: A fracture of the magnitude of R.M.'s would have been accompanied by immediate symptoms such as vomiting or headaches, and R.M.'s brain exhibited swelling that likely could not have been caused by the defense's hypothesized posttraumatic seizure.

The defense called as its expert Dr. Thomas Young, a board-certified pathologist. Young's view was that the fall on September 24 fractured R.M.'s skull but did not harm her brain, so that the child showed no signs of brain injury. Then, on September 30, R.M. suffered a posttraumatic seizure that stopped her breathing and ultimately caused her death. Unlike the State's experts, Young opined that R.M.'s fracture did show signs of healing by September 30, consistent with the theory that it was caused by a fall several days earlier.

After evaluating this competing testimony, the jury returned a guilty verdict and the trial court sentenced Hayes to 40 years in prison, followed by ten years of supervised release. The Supreme Court of Appeals of West Virginia affirmed the conviction.

**B.**

Hayes sought state post-conviction relief, raising multiple claims of ineffective assistance of counsel. As relevant here, Hayes argued that his trial lawyer was ineffective in opposing admission of his statement to the detectives, failing to call Hayes as a witness

6

or to cite the most relevant precedent in support of suppression. He also contended that his lawyer failed to meaningfully cross-examine Dr. Mock as to whether he met state-law qualifications for employment to conduct autopsies in the Office of the Chief Medical Examiner, or to investigate the issue independently.

The state post-conviction review ("PCR") court – once again, the Kanawha County Circuit Court – denied the petition. As to Hayes's first claim of ineffective assistance, the court found no deficient performance, given that counsel "zealously argued" the voluntariness question and the trial court was "clearly within its discretion to find that the statement was voluntary." J.A. 201. And even had there been deficient performance, the court concluded, Hayes could not show the necessary prejudice: Hayes's October 4 statement did not constitute a confession, and there was no "credible argument" that its exclusion likely would have changed the outcome of the trial. *Id.*

On Hayes's second ineffective-assistance claim, the court again found that Hayes had not established any deficiency in counsel's performance. Counsel "vigorously cross-examined" Mock as to his experience and credentials, the court determined, and offered a competing expert to refute Mock's opinions. *Id.* at 203. The court also found that Hayes had "fail[ed] to establish" that Mock actually was not qualified for employment to conduct autopsies under state law. *Id.* at 202. The state statute cited by Hayes, the court explained, allows the chief medical examiner to employ, for purposes of performing autopsies, a pathologist who either "holds board certification or board eligibility in forensic pathology" or "has completed an American Board of Pathology fellowship in

7

forensic pathology." *Id.* (quoting W. Va. Code § 61-12-10(a) (2010)).[1] Focusing on the second path to qualification, the court rested on Mock's testimony that he had served as a forensic pathology fellow in New Mexico. But it did not address whether that fellowship was accredited by the American Board of Pathology, as required by § 61-12-10(a), an issue on which the record appears to be silent.

The Supreme Court of Appeals of West Virginia affirmed the PCR court's decision to deny relief, adopting and incorporating its conclusions.

## C.

Hayes filed a timely 28 U.S.C. § 2254 petition in federal district court. The petition set forth four grounds for relief, two of which are relevant here. First, Hayes asserted that the trial court's admission of his October 4 statement violated the Due Process Clause because the statement was coerced. Second, he reiterated his claim of ineffective assistance of counsel with respect to Mock's qualifications, arguing that his trial lawyer failed to investigate whether Mock met state-law requirements for performing autopsies as an employee of the chief medical examiner. The district court rejected both claims, granted the State's motion for summary judgment, and dismissed Hayes's petition.

---

[1] In relevant part, the statute provides that under certain circumstances, "an autopsy shall be conducted by the chief medical examiner or his or her designee, by a member of his staff, or by a competent pathologist designated and employed by the chief medical examiner under the provisions of this article. For this purpose, *the chief medical examiner may employ any county medical examiner who is a pathologist who holds board certification or board eligibility in forensic pathology or has completed an American Board of Pathology fellowship in forensic pathology to make the autopsies*[.]" W. Va. Code § 61-12-10(a) (2010) (emphasis added).

Before addressing the merits, the district court considered whether Hayes's due process claim had been exhausted and adjudicated on the merits at the state level. Hayes's claim that his October 4 statement was coerced and thus inadmissible under the Due Process Clause, the court concluded, was related to but distinct from the ineffective assistance claim he raised before the state PCR court, based on his counsel's failure to have the statement excluded. Accordingly, Hayes had not "fairly presented" his due process claim to the PCR court, and that court had "evaluated [the] coercion argument solely through the lens of ineffective assistance of counsel." J.A. 1930. Nevertheless, the district court chose to resolve the due process issue on the merits, explaining that "further consideration of [procedural] default is unwarranted where," as in Hayes's case, "the [c]ourt can more easily dispense with the claim on the merits." *Id.* at 1932 (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)).

Turning to the merits, the district court held that under the totality of the circumstances, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), Hayes's October 4 statement was not involuntary under the Due Process Clause. The court's careful and thorough analysis began with the circumstances of the interview, which lasted for no more than two and a half hours, was conducted in the kitchen of the police station, and – critically – was preceded by a valid *Miranda* waiver executed by Hayes. The detectives repeatedly reminded Hayes that he was not under arrest, offered him breaks, and generally conducted themselves without "the slightest hint of threats or intimidation." J.A. 1938.

9

The detectives did make clear that they disbelieved Hayes's initial account, the district court recognized, calling him a liar and then presenting him with a different option: Instead of continuing to "feign ignorance" and being treated as a "remorseless killer," he could "confess to an accident resulting from a brief fit of rage or lapse in judgment and receive mercy." *Id.* at 1934. As the court acknowledged, "illusory promises of leniency may be sufficient to overbear the will" of a defendant and render a resulting statement involuntary. *Id.* at 1935. But here, no such promises were made: "[I]n [the] context of the entire interview transcript, it is plain that the detectives never promised or impliedly offered exoneration in exchange for a confession." *Id.* at 1936. Indeed, the detectives expressly told Hayes that his imminent arrest was "more than likely" regardless of his story, and Hayes signaled his understanding when he predicted that he would leave the station "in handcuffs." *Id.* at 1937. Rather, the detectives had "truthfully suggested the possibility of more lenient treatment" if Hayes had been involved in an accidental death, *id.* at 1936, and truthful statements about a suspect's legal prospects "are not the type of 'coercion' that threatens to render a statement involuntary," *id.* (quoting *United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987)).

The district court also rejected Hayes's argument that his counsel performed ineffectively by failing to raise an adequate challenge to Mock's qualifications. There was no dispute, the district court began, that Hayes's trial counsel had vigorously questioned Mock about his qualifications as well as his medical opinions, so the sole basis for Hayes's claim was the "factual question of whether . . . Mock was, in fact, qualified to perform autopsies on behalf of the State of West Virginia." J.A. 1941. And

10

that question boiled down to whether Mock had satisfied the second prong of § 61-12-10(a), by completing an "American Board of Pathology fellowship in forensic pathology." W. Va. Code § 61-12-10(a) (2010). Because the state PCR court had not addressed whether Mock's New Mexico fellowship was recognized by the American Board of Pathology, the district court reasoned, there was no factual finding on that question to which AEDPA deference was owed. *See Merzbacher v. Shearin*, 706 F.3d 356, 364 (4th Cir. 2013) (discussing deferential AEDPA review of state-court factual findings). Instead, the district court considered in the first instance whether Hayes was entitled to an evidentiary hearing into Mock's credentials.

Hayes was not entitled to a hearing, the district court held, because even assuming the facts he alleged were true – assuming, that is, that Mock's fellowship was not certified by the American Board of Pathology – he could not prevail on his ineffective assistance claim. The court assumed both that Mock did not meet the state's minimum employment qualifications and that Hayes's trial counsel had performed deficiently in failing to elicit that information at trial. Even so, the court held, Hayes's claim would fail because he could not show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). First, whether or not Mock's fellowship was Board-certified had only "limited implications" for Mock's credibility as a witness: Mock's hypothesized "failure to meet the employment qualifications for a particular office" did not render him "unfit to perform autopsies generally," J.A. 1949, and thus did "little to undermine the intrinsic validity of [his] autopsy findings," *id.* at 1950. And second, Mock's testimony was substantially corroborated by other trial evidence, including Dr. Caceres's testimony that

11

R.M.'s injury was both too severe and too fresh to have been sustained by her September 24 fall from the first step, and the testimony of R.M.'s mother that R.M.'s behavior after that fall was not consistent with that of a child who just had suffered a large skull fracture. Because there was no "reasonable probability" of a different trial outcome even if Mock were shown to fall short under § 61-12-10(a), the court concluded, Hayes had failed to allege facts that would entitle him to relief under *Strickland*'s prejudice prong and thus to an evidentiary hearing. *Id.* at 1952.

Though it dismissed his petition, the district court granted Hayes a certificate of appealability as to two issues: "first, the voluntariness of his October 4, 2010 statement to law enforcement, and second, the effectiveness of trial counsel in cross-examining Dr. Mock." *Id.* at 1959. This timely appeal followed.

## II.

We review the district court's denial of habeas relief de novo. *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Our analysis is circumscribed, however, by the amendments to 28 U.S.C. § 2254 enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, we may not grant relief on a claim that has been adjudicated on the merits in a state court proceeding unless, as relevant here, the state court's determination is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, § 2254 relief is barred unless the petitioner can show that the state court applied a legal standard that is contrary to federal law as "clearly

12

established in the holdings of [the Supreme] Court," *Harrington v. Richter*, 562 U.S. 86, 100 (2011), or, having "identifie[d] the correct governing legal principle," applied that principle to the facts of the case in a way that is "objectively unreasonable," *Wiggins v. Smith*, 539 U.S. 510, 520, 521 (2003).

## A.

We begin with Hayes's claim that his October 4 statement was involuntary, and that its admission by the state trial court therefore violated his due process rights. Although the district court began its analysis by considering whether Hayes properly presented that claim to the state PCR court – where Hayes alleged the involuntariness of his confession only in connection with an ineffective assistance claim, and not under the Due Process Clause – we need not resolve that issue here. Because the State expressly and unconditionally waived any exhaustion argument in its answer to Hayes's § 2254 petition,[2] we decline to address the issue of procedural default. *See Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (holding that exhaustion requirement is "technically met when exhaustion is unconditionally waived by the state"); *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) (courts need not reach procedural default where not preserved by state). And whether or not the state PCR court adjudicated Hayes's due process claim on the merits, the state trial court assuredly did, admitting Hayes's statement at trial over the

---

[2] The State's answer includes a "Statement Regarding Exhaustion," which expressly avers that Hayes's claims – including his due process claim – "appear to be the same grounds previously adjudicated by both the circuit court and [the state supreme court] throughout his underlying habeas corpus proceedings," and, "[a]s such . . . are now ripe for review" by the district court under § 2254. J.A. 27.

13

defense's due process objection and after a two-day suppression hearing. Accordingly, our review is under AEDPA, limited to whether the state trial court unreasonably applied clearly established federal law in deeming Hayes's statement voluntary under the Due Process Clause.

A statement is involuntary for due process purposes only if "the defendant's will has been overborne or his capacity for self-determination critically impaired." *United States v. Umaña*, 750 F.3d 320, 344 (4th Cir. 2014) (quoting *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc)). In making that determination, we consider the totality of the surrounding circumstances, *Schneckloth*, 412 U.S. at 226, and ask whether the statement was "extracted by any sort of threats or violence," or by "direct or implied promises" or other "improper influence," *Braxton*, 112 F.3d at 780. Under that well-established standard, we find nothing "unreasonable" about the state trial court's voluntariness determination.

We cannot much improve on the district court's detailed analysis of Hayes's interrogation and statement, summarized above. As the district court explained, the circumstances of Hayes's questioning – relatively short in duration, conducted in a station-house kitchen, punctuated by frequent reminders that Hayes was not under arrest and offers of breaks – include no threats or violence, nor any indicia of the kind of "improper influence" that might overbear the will. On the contrary, and as the district court properly emphasized, Hayes's execution of a valid *Miranda* waiver is a strong indication that his subsequent statement was the product of his own voluntary effort to minimize his legal exposure. *See Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004)

14

(noting that "litigation over voluntariness tends to end with the finding of a valid waiver"). And while the detectives certainly highlighted the potential benefits of accepting responsibility for an accidental death, they were careful not to cross the line into the kind of "illusory promises of leniency" that the district court recognized might render a statement involuntary. J.A. 1935. Under all of the relevant circumstances, the state court's voluntariness determination involved no unreasonable application of clearly established law.

**B.**

We turn next to Hayes's ineffective assistance claim regarding the cross-examination of Dr. Mock and, in particular, to his argument that he should have been afforded an evidentiary hearing to explore Mock's qualifications to perform autopsies as a State employee. The district court rejected the request for a hearing, holding that Hayes failed to allege facts that, if proven, would entitle him to relief on his claim of ineffective assistance of counsel. We agree with the district court.[3]

As the district court explained, Hayes is entitled to an evidentiary hearing only if he has alleged facts that, if true, would allow him to prevail on his ineffective assistance claim. *See Conaway v. Polk*, 453 F.3d 567, 588–90 (4th Cir. 2006). That claim, in turn, is evaluated under the familiar standard of *Strickland v. Washington*, 466 U.S. 688

---

[3] Accordingly, we need not consider whether the district court erred in failing to apply AEDPA deference on this issue, on the ground that the PCR court neglected to consider whether Mock's pathology fellowship was Board-accredited and thus could not find as a matter of fact that Mock was qualified for employment under the terms of § 61-12-10(a). Even if, as the district court assumed, Hayes was entitled to de novo review of his claim, we agree with the district court that he cannot prevail.

15

(1984), requiring that a petitioner show both constitutionally deficient performance by his lawyer and prejudice to his defense, *id.* at 690, 694, with prejudice defined as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Harrington*, 562 U.S. at 104. An insufficient showing under either prong ends the inquiry, so when it can be ascertained that there is no prejudice, it is unnecessary to reach *Strickland*'s deficiency prong. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Like the district court, we think that principle ends the inquiry here.

For present purposes, we will assume, as did the district court, that Mock's New Mexico fellowship was not accredited by the American Board of Pathology, so that he should not have been hired by the Office of the Chief Medical Examiner to perform autopsies under § 61-12-10(a). And we also will assume that Hayes's trial attorney, though he vigorously cross-examined Mock as to his credentials and medical opinions, fell "outside the wide range of professionally competent assistance," *id.* at 690, by failing to investigate and elicit testimony on this specific provision of state employment law. It nevertheless remains the case, as the district court held, that Hayes cannot prevail on his *Strickland* claim because he cannot show a "reasonable probability" that the outcome of his trial would have been different had the jury been informed that Mock did not meet the employment standards laid out in § 61-12-10(a).

First, as the district court explained, there is a significant gap between a finding that Mock was ineligible for employment to perform autopsies under § 61-12-10(a)

16

because his forensic pathology fellowship was not affiliated with the American Board of Pathology, on the one hand, and a finding that he was generally "unfit to perform autopsies," on the other. J.A. 1949. Nor did Hayes present any evidence to fill that gap by showing that the (presumed) nature of Mock's fellowship rendered him unqualified to conduct autopsies; on the contrary, the "trial transcript reveals that Dr. Mock was a well-qualified pathologist." *Id.* at 1950. In other words, even accepted as true, Hayes's allegations about Mock's fellowship and his state-law employment qualifications "do little to undermine the intrinsic validity" of his autopsy findings and related testimony. *Id.*

Second, and again in keeping with the district court's analysis, Mock's testimony was corroborated in critical respects by other trial evidence, and in particular, by the testimony of Dr. Caceres. Hayes's defense theory had two key components, as presented at trial by defense expert Dr. Young. According to Young, R.M.'s skull fracture was not fresh but instead was showing signs of healing when she died, suggesting that she was injured on September 24 (when she fell from the bottom step) and not on September 30 (when she fell unconscious while under Hayes's care). And, Young opined, R.M.'s lack of symptoms after the September 24 fall could be explained: The September 24 fall cracked R.M.'s skull but did not injure her brain, so that it was not until the child experienced a posttraumatic seizure on September 30 that she exhibited head-trauma distress. Mock disagreed with both these opinions, but – crucially – so did Caceres. Like Mock, Caceres testified that R.M.'s fracture was too severe to have been caused by a fall from the stairs, and did not show the signs of healing that would be expected had it been

17

sustained on September 24. And Caceres discredited the notion that R.M. could have sustained a five-inch skull fracture on September 24, remained symptom-free for almost a week, and then experienced the trauma of September 30: According to Caceres, symptoms like headaches and vomiting would have been immediate, and the brain swelling identified on September 30 was not consistent with the posttraumatic seizure put forth by the defense.

Under these circumstances, we agree with the district court that Hayes cannot show a "reasonable probability" that the result of his trial would have been different had the jury been informed that Mock's forensic pathology fellowship did not meet the standards set out by state law for employees of the Office of the Chief Medical Examiner who conduct autopsies. Because it follows that Hayes would not be entitled to relief on his *Strickland* claim even assuming the truth of his allegations, we affirm the district court's denial of his request for an evidentiary hearing and dismissal of his claim.

## III.

For the reasons given above, the judgment of the district court is

*AFFIRMED.*