20031

W. M. KIRKLAND, INC., Appellant, v. PROVIDENCE WASH-
INGTON INSURANCE COMPANY, Respondent.

(216 S. E. (2d) 518)

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Appellant,*

576

*James W. Hudgens, Esq.,* of *Ward, Howell, Barnes & Long,* Spartanburg, *for Respondent,*

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Appellant,* in Reply.

June 11, 1975.

BUSSEY, Justice:

Although not so denominated, this is a case wherein the appellant, Kirkland, seeks, in effect, a declaratory judgment that it is, under the facts involved, entitled to an equitable offset and relief incidental thereto. This case and allied litigation have pursued a somewhat meandering course and resulted in somewhat clouding the issues which in the final analysis are relatively simple. For a full understanding,

however, it is first essential to give a fairly full factual background.

While only the appellant and respondent are still involved in this litigation the parties initially connected therewith in some capacity are quite numerous, the key ones being as follows:

1. Gene E. Phillips, who was,

(a) the sole general partner in Spartanburg Hamlet Limited Partnership (hereinafter referred to simply as Hamlet), which is the owner of Hamlet Gardens;

(b) the sole incorporator, director, president, etc. of Phillips Development Corporation, now bankrupt, which was the general contractor in the construction of Hamlet Gardens;

2. W. N. Kirkland, Inc., the appellant herein, subcontractor on Hamlet Gardens construction project;

3. C. Douglas Wilson Company, holder of first mortgage on Hamlet Gardens;

4. Caine Company, appointed receiver for Hamlet, insolvent;

5. Hartford Accident and Indemnity Insurance Company, which issued a general liability policy to Kirkland;

6. Providence Washington Insurance Company, the respondent, who issued a builder's risk policy to Hamlet.

On June 7, 1973, in the course of construction of Hamlet Gardens, an employee of Kirkland negligently caused a fire which resulted in damage, originally estimated by Kirkland to amount to $12,000.00, but later ascertained to be $9,894.93, apparently to the satisfaction of all parties. On October 18, 1973, Hamlet was placed in receivership, Phillips Development Corporation having been already adjudicated as bankrupt. Kirkland filed a mechanics lien against the Hamlet Gardens property in the amount of $27,572.72, which lien was later adjudicated to be a valid one.

Wilson commenced an action to foreclose its mortgage and all mechanics lien holders were either named or became party defendants therein. By answer, in the foreclosure action, Kirkland offered to offset the fire damage claim against it then estimated to be $12,000.00 against its mechanics lien thus reducing its claim under the mechanics lien to $15,572.72. The rights of the parties with respect to the proffered offset were never adjudicated in the foreclosure action, but when the same was finally determined, Kirkland participated in the distribution based on the remainder of the mechanics lien after deducting the proffered offset in the amount of 12,000.00.

The action with which we are presently concerned was commenced on December 10, 1973 by the appellant, Kirkland, against Caine Company, the receiver, the trustee in bankruptcy for the Phillips Development Corporation, and Hartford, the purpose of the action being to establish Kirkland's claimed right of a *pro tanto* offset, and to require Hartford to reimburse Kirkland for the discharge of Hartford's liability by Kirkland through such offset. In an amended and supplemental complaint dated February 25, 1974, Wilson, the holder of the first mortgage, was made a party and it was alleged that the amount of the fire damage had been ascertained to be the sum of $9,894.93, Kirkland reducing its claim for reimbursement by Hartford to that figure. Additional facts were alleged therein which we do not presently deem essential to our decision.

On February 22, 1974, Hamlet's insurer Washington, the respondent herein, paid under its policy the fire damage claim in the amount of $9,894.93. Such was approved by an order of the court in the foreclosure proceeding. Under said order and the subrogation receipt, all of the rights of Wilson, Hamlet, Gene E. Phillips, as general partner, and Caine Company, as receiver, in and to the fire damage claim against Kirkland were assigned to Washington. What, if any, claim Wilson ever had against Kirkland does not ap-

pear and neither does any such right of Phillips, as general partner, appear.

On March 25, Kirkland again filed a supplemental complaint wherein Washington was also made a defendant. The amount of the fire damage claim having been finally determined to the satisfaction of all parties, Hartford realized that it had to pay someone $9,894.93 and hence paid that amount into the court and was, by order of the court, relieved of any further liability. By a subsequent order, on May 4, 1974, the court dismissed the action as to all defendants except Washington. The cause finally came on for a hearing upon motions by both Kirkland and Washington asking for summary judgments in their respective favors, the lower court granting the motion of Washington by decree dated July 11, 1974. From such order Kirkland appeals.

Two factors have, we think, unnecessarily complicated this case. First, Phillips was, in effect, doing business with himself wearing two different legal entity hats, one of which legal entities ended up in Federal bankruptcy and the other in a State court receivership. Secondly, if none of the parties had had any insurance the issues would, we think, have been relatively simple. Whether Washington's role in the present litigation is that of assignee or equitable subrogee is, we think, relatively unimportant. In either event Washington stands in the shoes of the receiver, who in turn stood in the shoes of Hamlet. If Washington be regarded as an assignee, it can, by virtue of code section 10-706, have no higher right against Kirkland than did Hamlet. The same is true if Washington be regarded as a subrogee. See 11 Appleman, Insurance Law and Practice, section 6505; 73 Am. Jur. (2d) 665, Subrogation, section 106.

The fact that Kirkland happened to have liability insurance with Hartford produced no greater legal right in Hamlet than Hamlet had against Kirkland

uninsured and, of course, unless Hamlet had an enforceable claim against Kirkland, Washington took nothing as either assignee or subrogee insofar as Kirkland is concerned.

In October, 1973, when Hamlet became insolvent, Kirkland was indebted to Hamlet in the amount of the fire damage claim. Kirkland had a valid mechanics lien against Hamlet's property of more than $27,000.00, it being asserted and not denied that Kirkland had added that much to the value of Hamlet's property to the benefit of Hamlet and its creditors. It is now the law of the case, if not conceded, that there was no personal liability on the part of Hamlet to pay the amount owed Kirkland, only the specific property of Hamlet being liable for the payment of the amount of the mechanics lien.

With certain exceptions, the court generally recognizes a broad rule to the effect that it is essential to the assertion of a counterclaim that the debts or demands of the respective parties must be mutual, that is that such claims must be due to and from the same parties and in the same right or capacity and must be of the same kind or quality. Under this rule a counterclaim ordinarily cannot be asserted where the parties are not the same or where the claims or debts accrued in different rights or dissimilar capacities, and the rule has sometimes been applied in deciding whether or not a set-off should be allowed. It is essential to remember, however, that a counterclaim is distinguishable from a set-off, a counterclaim being statutory while set-off belongs to the inherent power of a court in the exercise of its equitable jurisdiction. Therefore the courts generally do not, with respect to a set-off, require the same strict degree of mutuality as is required in the case of a counterclaim.

We think the decision of this case is controlled by the case of *Carwile v. Metropolitan Life Insurance Co.*, 136 S. C. 179, 134 S. E. 285. It was there held that, in equity, a set-off does not have to meet the require-

ments for a counterclaim under the code; that the absence of strict mutuality does not prevent the allowance of equitable set-off where justice demands it and that the insolvency of a party against whom set-off is claimed is sufficient ground for equitable interference. In the present case there is not strict mutuality in that the indebtedness to Kirkland is a lien upon Hamlet's property as opposed to being a personal liability of Hamlet. Between Kirkland and Hamlet, however, under all the circumstances of the case we deem that Kirkland was nevertheless equitably entitled to a *pro tanto* offset. Certainly there is nothing unfair to Hamlet in allowing it and nothing in this record to indicate that the allowance of an offset was inequitable to any other creditors of Hamlet. Under the circumstances the fire damage claim was never a realizable asset of Hamlet's which could enure to the benefit of creditors. As between Hamlet and Kirkland it would be manifestly inequitable to allow Hamlet to collect the fire damage claim from Kirkland when Kirkland had improved the property of Hamlet to the extent of $27,000.00 and had a lien against such property for such improvement from which lien, however, Kirkland could recoup only a very small percentage of that which Kirkland had expended for the improvement of Hamlet's property.

Since Kirkland was equitably entitled to discharge its obligation for the fire claim by set-off, any rights that Washington has in this case were and are subject to Kirkland's equitable right of set-off. It follows that Washington took no valid, enforceable claim against Kirkland or Hartford by its subrogation receipt or by the order of court approving the settlement and the court below was in error in holding Washington entitled to judgment for the funds deposited in the court.

In conclusion respondent argues, *inter alia,* that Kirkland is in no event entitled to the funds deposited by Hartford, it being contended that Kirkland was a volunteer in settling the claim through an offset and that such was in violation

of the policy issued by Hartford and that Kirkland is not entitled to be subrogated to anyone else's claim against Hartford for the amount involved. Neither of these points appears to have been urged by way of any additional sustaining ground and moreover Hartford has raised no contention as to Kirkland not having complied with the terms of its policy. Kirkland has paid a claim which was Hartford's contract liability and we know of no reason, legal or equitable, why Kirkland is not entitled to a judgment for the funds deposited by Hartford. The judgment below is reversed and the cause remanded for entry of judgment in favor of Kirkland.

Reversed.

Moss, C. J., and Lewis, Littlejohn and Ness, JJ., concur.