Leon E. THOMAS, Petitioner–Appellee,

v.

William DAVIS, Warden of Lee Correctional Institution; Charles Molony Condon, Attorney General of the State of South Carolina, Respondents–Appellants.

No. 98–6824.

United States Court of Appeals, Fourth Circuit.

Argued: Jan. 25, 1999.

Decided: Sept. 28, 1999.

**ARGUED:** William Edgar Salter, III, Senior Assistant Attorney General, Columbia, South Carolina, for Appellants. Keir Michael Weyble, Columbia, South Carolina, for Appellee. **ON BRIEF:** Charles M. Condon, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellants. John H. Blume, Columbia, South Carolina, for Appellee.

Before ERVIN,* NIEMEYER, and KING, Circuit Judges.

Reversed by published opinion. Judge KING wrote the opinion, in which Judge NIEMEYER joined.

## OPINION

KING, Circuit Judge:

William Davis, the warden of Lee Correctional Institute in Bishopville, South Carolina, and Charles Condon, the Attorney General of South Carolina, appeal the final judgment of the district court granting, pursuant to 28 U.S.C. § 2254, a writ of habeas corpus to prisoner Leon E. Thomas. Davis and Condon also appeal the district court's subsequent denial of their motion to alter or amend the judgment.

The district court's grant of relief, if sustained, requires that Thomas be resentenced on his 1991 state conviction for marijuana trafficking, and that the term of imprisonment imposed thereon not exceed ten years. Thomas was initially committed to state custody to serve a mandatory prison term of twenty-five years on his trafficking conviction; he remains incarcerated.

We conclude that Thomas's sentence was not imposed in violation of the Consti-

---

* Judge Ervin heard oral argument in this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

tution or laws of the United States. We therefore reverse the judgment below.

## I.

### A.

Thomas was convicted by a South Carolina jury in 1991 of trafficking in slightly more than ten pounds of marijuana, in contravention of the state's Controlled Substances Act (the Act). Section 44–53–370 of the Act provides, in pertinent part:

(e) Any person who knowingly sells ... delivers ... or who is knowingly in actual or constructive possession ... of:

(1) ten pounds or more of marijuana is guilty of a felony which is known as "trafficking in marijuana" and, upon conviction, must be punished as follows if the quantity involved is:

(a) ten pounds or more, but less than one hundred pounds:

1. for a first offense, a term of imprisonment of not less than one year nor more than ten years[;]

.    .    .    .    .

3. for a third or subsequent offense, a mandatory term of imprisonment of twenty-five years[.]

S.C.Code Ann. § 44–53–370(e)(1)(a) (West 1998 Supp.). Those convicted of trafficking in marijuana are ineligible for probation, and no part of their sentence may be suspended. *Id.*

Prior to 1991, Thomas had twice been convicted in state court of marijuana-related offenses. In 1982, he was convicted of possessing two and one-half pounds of marijuana with the intent to distribute it, and, in 1985, he was convicted of distributing approximately one pound. Of significance to this appeal is another provision of the Act, which addresses generally the effect of previous convictions on sentencing for subsequent controlled substance offenses:

An offense is considered a second or subsequent offense, if, prior to his con-

viction of the offense, the offender has at any time been convicted under this article or under any State or Federal statute relating to ... marihuana....

S.C.Code Ann. § 44–53–470 (Law. Coop. 1985).

The trial court treated Thomas's prior convictions as predicate offenses within the meaning of Section 44–53–470, invoking the mandatory sentence of twenty-five years' imprisonment under Section 44–53–370(e)(1)(a)(3). The court sentenced Thomas accordingly.

### B.

In 1993, Thomas filed an application for post-conviction relief in the Court of Common Pleas of Richland County, South Carolina (the PCR court). That court, on October 26, 1994, ruled in Thomas's favor, holding that the general provisions of Section 44–53–470 did not bear on the proper interpretation of Section 44–53–370, which the court found to be a self-contained scheme.

To be susceptible to imprisonment for twenty-five years, the court reasoned, a person would have to be convicted of trafficking in ten pounds or more of marijuana on three separate occasions. Inasmuch as Thomas had not been twice previously convicted of trafficking in the threshold amount, the PCR court decided that he should be resentenced as a first offender. The court also noted:

At best, the statute must be viewed as ambiguous on this matter.... [A] state criminal statute violates the Due Process Clause of the United States Constitution if that statute is not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally v. General Const. Co.,* [269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ].... [T]he statute does not clearly put a person on notice as to the penalty applicable to the crime, a funda-

mental requirement of the Due Process Clause.

The PCR court's grant of relief, therefore, rested on alternative grounds: (1) a straightforward statutory construction ground; and (2) a "fair notice" ground, derived from constitutional principles of due process and based on the supposed ambiguity in the Act.

The State appealed the adverse ruling to the Supreme Court of South Carolina. In its petition for certiorari, the State framed the question presented as:

Whether the lower court erred in finding that the Respondent is entitled to be resentenced as a first offender under the trafficking in marijuana statute where the Respondent had prior convictions for possession with intent to distribute marijuana and distribution of marijuana at the time of his conviction for trafficking in marijuana?

Thomas's response restated the issue:

Did the post-conviction relief judge properly rule that the trial judge erred in imposing an enhanced sentence upon the respondent for his trafficking in marijuana conviction?

The parties' briefs focused on their respective views of the proper construction of the Act; neither side addressed the PCR court's alternative holding that the very existence of conflicting plausible interpretations afforded an independent basis for relief.

The Supreme Court of South Carolina unanimously reversed. The high court rejected the PCR court's interpretation of the Act, stating that

both statutes are part of the same general law and can be read together without any conflict.... The legislature could not have intended second or subsequent offenses under § 44–53–370(e)(1) to include only the offense of marijuana trafficking when there is a specific statute which defines second or subsequent offenses as any drug offense.

*Thomas v. State,* 319 S.C. 471, 465 S.E.2d 350, 352 (1995).

### C.

Having ultimately lost in the state courts, Thomas petitioned the district court for habeas relief on April 14, 1997, alleging the fair–notice claim as the sole ground in support thereof.[1] As the named respondents, the warden and the Attorney General moved for summary judgment, and the matter was referred to a magistrate judge.

On September 8, 1997, the magistrate judge issued a Report and Recommendation that the petition be denied on the ground that, in the judge's view, the Supreme Court of South Carolina had ruled the fair-notice aspect of Thomas's claim to have been abandoned, and thus procedurally barred from consideration. To the extent that the federal courts are bound to respect the prerogative of state tribunals to fashion and interpret their own rules of procedure, the magistrate judge concluded, the fair-notice claim had been defaulted on federal review.

1. The federal habeas remedy may only be invoked to redress the harm caused those persons held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wright v. Angelone,* 151 F.3d 151, 157 (4th Cir.1998) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). The Supreme Court of South Carolina is, of course, the ultimate arbiter of that state's laws; a claim that it had simply misconstrued an act of the state legislature would not be cognizable on federal collateral review.

Instead, Thomas's § 2254 petition alleges that his sentence "was imposed in violation of the Due Process Clause of the Fourteenth Amendment because he was not afforded fair notice of the penalty he would face upon his first conviction of the crime of trafficking in marijuana[.]" The petition therefore states a claim that, if proved, would entitle Thomas to the relief he seeks.

The district court, upon considering Thomas's objections to the Report and Recommendation, disagreed with the magistrate judge. In a carefully reasoned and ably crafted opinion, the district court determined that the Supreme Court of South Carolina had not dismissed Thomas's fair-notice claim as the result of his failure to properly present it, but had instead implicitly denied it on the merits, thus preserving the issue for review in the federal courts.

With regard to the substance of the claim, the district court determined that South Carolina's sentencing scheme for marijuana trafficking impinged on Thomas's constitutional right to due process, holding that the Act did not provide fair notice of the applicable penalties for its violation. The court therefore denied the respondents' motion for summary judgment, and it entered an order and judgment on March 16, 1998, granting the writ of habeas corpus. From that final order, and from the district court's subsequent denial of their motion to alter or amend the judgment, the warden and the Attorney General appeal.

## II.

■ The respondents—now appellants—attack the district court's threshold determination that Thomas's fair-notice claim was adjudicated on the merits in the state habeas proceedings, asserting that the Supreme Court of South Carolina instead declined to consider the claim on the ground that it had not been properly preserved in accordance with state procedure. If the appellants are correct, then merits review of the claim may likewise be foreclosed in the federal courts, but only if the rule of procedure relied upon is determined to be an adequate and independent state-law ground for decision. *See Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir.) (citing *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)), *cert. denied*, —— U.S. ——, 119 S.Ct. 1517, 143 L.Ed.2d 668 (1999).

■ A state rule of procedure is "adequate" if it is consistently or regularly applied. *See Johnson v. Mississippi*, 486 U.S. 578, 587–589, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). It is "independent" if it does not "depend[ ] on a federal constitutional ruling." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Deducing the basis underlying the state court's decision to withhold relief presents us with a "purely legal" question, which we review de novo. *Skipper v. French*, 130 F.3d 603, 608 (4th Cir.1997).

### A.

■ Whether we may proceed to the merits of Thomas's fair-notice claim thus depends on the answers to three questions:

1. What is the rule of procedure that would potentially bar the claim from consideration by the state court?
2. Is the rule one that may be deemed adequate and independent?
3. Was the rule actually relied upon by the state court?

In sum, if an identifiable procedural rule of non-constitutional origin, consistently or regularly applied, is the reason that the claim failed at the state level, then the claim will ordinarily afford no basis for federal habeas relief.[2]

### 1.

The rule that the appellants seek to invoke eludes ready identification, at least

---

2. As we explain in more detail in Section II.B., *infra*, our unwillingness to entertain claims procedurally defaulted at the state habeas level is grounded in prudential concerns. We are not divested of jurisdiction to consider such claims. *See Yeatts*, 166 F.3d at 260–61. If a federal habeas petitioner "can demonstrate either cause for and resulting prejudice from the default, or that he has suffered a fundamental miscarriage of justice," we may grant relief notwithstanding the state habeas court's reliance on a procedural bar. *Williams v. Taylor*, 163 F.3d 860, 873 (4th Cir.1998) (citations omitted), *cert. granted*, —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999).

as applied to the facts of this case. Our attention is drawn initially to South Carolina Appellate Court Rule 207, pertaining to the filing of briefs and the designation of issues on appeal:

> (b) CONTENT. The initial briefs under this Rule ... shall contain:
>
>> (1) BRIEF OF APPELLANT. The brief of appellant shall contain under appropriate headings ...:
>>
>>> (B) STATEMENT OF ISSUES ON APPEAL. A statement of each of the issues presented for review.... Broad general statements may be disregarded by the appellate court. *Ordinarily, no point will be considered which is not set forth in the statement of issues on appeal.*
>>
>> · · · · ·
>>
>> (2) BRIEF OF RESPONDENT. The brief of respondent shall conform to the requirements of Rule 207(b)(1)(A)-(E), except that a statement of the issues ... need not be made unless the respondent is dissatisfied with the statement of the issues ... by appellant.... *Respondent's brief may also contain argument asking the court to affirm for any ground appearing on the record[.]*

SCACR 207(b)(1)(B), (2) (emphases added).

In the proceedings before the Supreme Court of South Carolina, the State assumed the role of appellant and Thomas was the respondent. As we noted in Section I.B., *supra*, the State framed the issue on appeal as

> Whether the lower court erred in finding that the Respondent is entitled to be resentenced as a first offender under the trafficking in marijuana statute[.]

A broader, more general declaration is difficult to imagine. The restatement in Thomas's brief was similarly unhelpful:

> Did the post-conviction relief judge properly rule that the trial judge erred ·in imposing an enhanced sentence[?]

Although the PCR court had plainly granted relief based on its construction of the state Controlled Substances Act *and* on federal constitutional grounds, neither party's statement of the issues noted the distinction. Moreover, the opposing briefs focused on the correctness of the PCR court's interpretation of the Act, to the utter exclusion of the constitutional question.

The appellants contend that, as a result of Thomas's failure to propound the fair-notice claim on the *State's* appeal from the PCR court's ruling, the Supreme Court of South Carolina ".was procedurally barred from considering the same[.]" Brief of Appellants at 11. According to the appellants, Thomas was bound to specifically raise the fair-notice claim either as an "additional sustaining ground" pursuant to SCACR 207(b)(2), or "otherwise."

The purpose of an additional sustaining ground under South Carolina law is "to relieve a respondent who, in the trial court, has obtained a judgment giving him all the relief that he sought, from the necessity of appealing from *adverse* rulings that did not affect the result of the lower court's decision." *Colonial Life & Accident Ins. Co. v. South Carolina Tax Comm'n*, 233 S.C. 129, 103 S.E.2d 908, 913 (1958) (emphasis added). Inasmuch as the PCR court's ruling on the fair-notice claim was not adverse to Thomas, it appears that he was not required by SCACR 207(b)(2) to assert the claim as an additional sustaining ground. Although the appellants point to several instances where a respondent's failure to raise a particular argument as an additional sustaining ground rendered it susceptible to default, it is by no means clear that the respondents in any of these cases had, like·Thomas,·prevailed on the argument in the lower court.[3]

---

**3.** In *Vaught v. Waites,* 300 S.C. 201, 387 S.E.2d 91 (1989), the trial court had not pre-

It *is* clear, however, from the plain language of SCACR 207(b)(1)(B) and the relevant case law, that the *State's* failure to specifically raise the PCR court's fair-notice ruling in its Statement of Issues on Appeal to the Supreme Court of South Carolina rendered it vulnerable to having the matter decided against it by default. *See, e.g., Sorin Equip. Co., Inc. v. The Firm, Inc.,* 323 S.C. 359, 474 S.E.2d 819, 822 (1996) (refusing to correct trial court's erroneous measure of damages, as matter was not set forth in appellant's Statement of Issues, and therefore not appealed). Though we do not doubt that the South Carolina appellate courts possess the discretion to excuse such a default, there is no authority for the proposition that an issue (1) decided in the respondent's favor in the lower court; (2) not included within the appellant's Statement of Issues; and (3) also not proffered by the respondent as an additional sustaining ground, shall nonetheless be resolved in the appellant's favor on the basis of the respondent's neglect.

Nor is it apparent that the fair-notice claim warranted default as the result of Thomas's failure to "otherwise" bring it to the attention of the Supreme Court of South Carolina. It is certainly true that, in South Carolina as elsewhere, even properly preserved issues can be treated as abandoned on appeal if they are not briefed or argued. As the appellants point out, there is no shortage of cases illustrating this concept with respect to unwitting respondents. *See Cason v. Gibson,* 217 S.C. 500, 61 S.E.2d 58, 62 (1950) (additional sustaining grounds submitted, but not briefed, "need not be particularly considered"); *Maxey v. R.L. Bryan Co., Inc.,* 295 S.C. 334, 368 S.E.2d 466, 467 n. 2 (1988)

(same); *May v. Hopkinson,* 289 S.C. 549, 347 S.E.2d 508, 513 (1986) (same).

We note, however, that cases in which the *appellant* has been deemed to have abandoned an argument by not briefing it are legion. *See, e.g., State v. Hornsby,* 326 S.C. 121, 484 S.E.2d 869, 871 n. 1 (1997); *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838, 842 (1981). If there is a finger to be pointed in this case, we are inclined to point it at the appellants. Although Thomas could have prevailed on appeal without having raised the fair-notice claim (that is, had the Supreme Court of South Carolina accepted his statutory construction argument), the same cannot be said for the State. In order for the State to prevail, it was compelled to persuade the appellate court that *both* of the grounds advanced by the PCR court in support of its decision were incorrect. We think that the burden was therefore more properly on the State to fairly and fully set forth the case on appeal.

The uncertain state of affairs in South Carolina as to whether a respondent in Thomas's position would—given the unusual posture of this case—be declared to have defaulted a claim not raised as an additional sustaining ground or otherwise, permits only one conclusion. If the fair-notice claim was in fact deemed to have been procedurally barred, it was done so on the basis of a rule that was not, and has not previously been, articulated.

### 2.

■ Obviously, a rule sought to be applied for the first time cannot have been consistently or regularly applied in the past. Therefore, the rule urged by the

---

viously ruled upon the issue that the respondent failed to raise as an additional sustaining ground. *See id.* at 93. The same situation presented itself in *Talley v. South Carolina Higher Educ. Tuition Grants Comm.,* 289 S.C. 483, 347 S.E.2d 99, 101 (1986). In the remaining cases, there is no indication of how the respondents fared at the trial level with their alternative arguments, or even whether

those arguments had been raised or ruled upon below. *See W.M. Kirkland, Inc. v. Providence Washington Ins. Co.,* 264 S.C. 573, 216 S.E.2d 518, 522 (1975); *Gunnells v. Raybestos–Manhattan, Inc.,* 261 S.C. 106, 198 S.E.2d 535, 536 (1973); *Graves v. Serbin Farms, Inc.,* 295 S.C. 391, 368 S.E.2d 682, 683–84 (1988); *First State Savings & Loan Ass'n v. Nodine,* 291 S.C. 445, 354 S.E.2d 51, 54 n. 2 (1987).

appellants is not "adequate" under *Johnson* and its progeny.[4] It bears mention, though, that even if we were to accept the cases cited by the appellants as establishing the rule ostensibly applied in the state proceedings, it does not appear to be one applied with any consistency or regularity.[5]

### 3.

■ A state rule of procedure cannot command default of a claim asserted by a federal habeas petitioner unless the last state court to consider the claim actually relies on the rule to reject it. *Harris*, 489 U.S. at 261–62, 109 S.Ct. 1038; *Nickerson v. Lee*, 971 F.2d 1125, 1128 (4th Cir.1992) (citing *Caldwell v. Mississippi*, 472 U.S.

4. It is agreed that any rule upon which the Supreme Court of South Carolina could have relied in holding the fair-notice claim to be defaulted would be non-constitutional in origin, and thus "independent" within the meaning of *Ake*.

5. *Compare Talley*, note 3 *supra*, at 487 (noting failure of respondent to raise issue as additional sustaining ground, but ruling it defaulted primarily for another reason); *Kirkland*, note 3 *supra*, at 522 (reaching merits notwithstanding respondent's procedural failure); *Gunnells*, note 3 *supra*, at 536 (reaching merits); *Maxey*, 368 S.E.2d at 467 n. 2 (merits addressed), *with State v. Moulds*, 264 S.C. 404, 215 S.E.2d 445, 447 (declining to address merits of additional sustaining ground not in compliance with the court's rules); *Graves*, note 3 *supra*, at 393 (merits not reached where issue not raised as an additional sustaining ground). *See also State v. Tessnear*, 257 S.C. 290, 185 S.E.2d 611, 613 (1971) (failure of respondent to file brief not ground for reversal); *Cason*, 61 S.E.2d at 62 (rejecting on the merits contentions not argued in respondent's brief).

We recognize that a state court need not slavishly follow its own procedural rules in order to establish their adequacy under *Johnson*. *See Yeatts*, 166 F.3d at 263–64 ("Consistent or regular application of a state rule of procedural default does not require that the state court show an 'undeviating adherence to such rule admitting of no exception[.]' ") (quoting *Wise v. Williams*, 982 F.2d 142, 143 (4th Cir.1992)). It suffices to say that the deviation illustrated by the above cases, wherein the exception virtually swallows the rule, likely does not establish the requisite pattern of consistency or regularity.

320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). The Supreme Court of South Carolina reversed the judgment of the PCR court in its entirety; there can be no doubt that it rejected the fair-notice aspect of Thomas's claim in conjunction with the statutory construction argument.

■ The basis for the claim's rejection, however, is much less certain. The state court's entire discussion of Thomas's case amounted to only three paragraphs, and it was wholly devoted to the proper interpretation of the Controlled Substances Act. There is simply no indication of how the court disposed of the fair-notice claim, other than its general announcement that the judgment below had been "reversed."[6]

6. Although the opinion of the Supreme Court of South Carolina nowhere states that its rejection of Thomas's fair-notice claim was based on the application of a procedural bar, we are not entitled to simply presume that the court therefore decided the claim on the merits. Admittedly, such an approach is appropriate in certain cases where the basis underlying the state court's decision is unclear. *See* *Harris*, 489 U.S. at 263, 109 S.Ct. 1038 ("[A] procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (citations and internal quotation marks omitted). The *Harris* presumption does not apply in cases such as this one, however, where the state court's decision does not "fairly appear" to rest primarily on federal law or to be interwoven with such law. *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Nor does the "look-through" approach taken in *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), provide us with any assistance in the circumstances of this case. Under *Ylst*, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. 2590. Here, of course, the PCR court granted relief on the federal claim, and that judgment was reversed, not upheld. The PCR court's opinion thus offers no clue as to the reasoning behind the Supreme Court of South Carolina's unexplained disposition of Thomas's federal claim.

We think it unlikely, for two reasons, that the Supreme Court of South Carolina actually relied on a procedural rule to deny Thomas habeas relief. First, as should be evident from our discussion in Section II.A.1., *supra*, it is not an easy task to decide which party should have been charged with the responsibility of ensuring that the fair-notice claim was squarely addressed on appeal. In light of the novelty and complexity of this question, we doubt that the state's highest court would have resolved it without so much as a word of explanation.[7]

Second, and perhaps more tellingly, this is the rather unusual case where the merits of the state-law claim are bound tightly with those of the constitutional claim. As we will discuss in further detail in Section III, *infra*, the essence of Thomas's fair-notice claim is that the state's sentencing scheme is ambiguous for those convicted of trafficking in marijuana. An examination of Justice Moore's opinion for the Supreme Court of South Carolina, however, reveals that Thomas's view was not shared by those deciding his appeal.

We have already quoted the relevant portion of Justice Moore's opinion in Section I.B., *supra*. We simply note for the purposes of this discussion the court's holding that the sections of the Act creating the supposed ambiguity "can be read together without *any* conflict." *Thomas*, 465 S.E.2d at 352 (emphasis added). The court further opined that "[t]he legislature *could not* have intended second or subsequent offenses ... to include only the offense of marijuana trafficking when there is a specific statute which defines second or subsequent offenses as any drug offense." *Id.* (emphasis added).

In short, although the sentencing provision at issue here may—at least arguably—be ambiguous, the position of the Supreme Court of South Carolina is not:

the Act is clear, and it implements the plain intent of the state's elected representatives. Hence, the court's opinion, while undoubtedly a resounding rebuff of Thomas's statutory construction argument, can easily be read as also rejecting the fair-notice claim on its merits.

### B.

Our respect for the procedural rules observed by the South Carolina courts is grounded in principles of comity and federalism. *Skipper*, 130 F.3d at 609. We have noted that "[c]omity is a two-way street, requiring a delicate balancing of sometimes-competing state and federal concerns." *Yeatts*, 166 F.3d at 261 (citation omitted).

In a case where (1) the rule at issue is difficult to identify; (2) the consistency or regularity of its application cannot be readily determined; and (3) serious doubts exist as to whether the rule was actually relied upon, a state's interest in the federal enforcement of its procedures is necessarily at its nadir. Presented with precisely that scenario here, we are convinced that the better course is to conclude that Thomas's fair-notice claim was not ruled defaulted at the state level. We therefore proceed to consider the merits of the claim.

### III.

### A.

Because we hold that the Supreme Court of South Carolina's disposition of Thomas's fair-notice claim was an adjudication on the merits, our standard of review is governed by § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

---

**7.** *Cf. Skipper*, 130 F.3d at 613 ("Skipper's petition for certiorari ... challenged the imposition of a procedural bar that was apparently unprecedented in state court prac-tice.... [I]t is difficult to believe that had the state supreme court intended to uphold this unprecedented procedural bar ..., it would not have said so and explained why.").

court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). We apply the standard of review enunciated in § 2254(d)(1) to all claims "adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. *Cardwell v. Greene*, 152 F.3d 331, 339 (4th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 587, 142 L.Ed.2d 491 (1998).

■■■ In the vast majority of cases, where no Supreme Court case is controlling as to law and fact, federal habeas relief is warranted "only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). Whether the sentencing provisions under scrutiny in this case violated Thomas's due process rights indeed presents a question of "pure law." We now turn to the relevant Supreme Court precedents.

B.

■■■ A criminal statute is invalid under the Due Process Clause "if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'" *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)); *see United States v. Lanier*, 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (requiring " 'fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed' ") (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931)). Sentencing provisions may also violate due process if they do not afford fair notice of the penalty that applies to the forbidden conduct. *Batchelder*, 442 U.S. at 123, 99 S.Ct. 2198. Ambiguities as to the applicable penalty must be resolved in favor of lenity, granting the defendant the benefit of the doubt. *Id.* at 121, 99 S.Ct. 2198.[8]

■■■ We perceive no ambiguity in the sentencing provisions for marijuana trafficking contained within South Carolina's Controlled Substances Act. Section 44-53-370(e)(1)(a)(3) of the Act mandates a term of imprisonment of twenty-five years "for a third or subsequent offense." The Act is replete with references to "subsequent offenses," in Section 44-53-370 and elsewhere.[9] Section 44-53-470, which is plainly intended to apply generally to the Act, defines a "subsequent offense" as one predicated on at least two previous convic-

---

8. We have previously held with regard to sentencing provisions that "the notice required to satisfy due process is less rigorous than that applied to substantive provisions." *United States v. Pinto*, 905 F.2d 47, 49 (4th Cir.1990) (citation omitted). It does not appear, however, that the Supreme Court has ever squarely confronted this question. Inasmuch as our review under § 2254(d)(1) is only concerned with Supreme Court precedent, we evaluate the state court's disposition of Thomas's fair-notice claim to ensure its compliance with the undiluted standard announced in *Batchelder*.

9. *E.g.*, S.C.Code Ann. § 44-53-375 (prescribing the penalties for first, second, and third or subsequent offenses regarding the possession, distribution, or manufacture of "ice, crank, or crack cocaine"); S.C.Code Ann. § 44-53-450 (providing for pre-sentencing probation and ultimate dismissal of criminal proceedings for certain first offenders, and stating that such a disposition is not to be counted as a predicate offense for the purpose of imposing the enhanced penalties applicable to "second or subsequent" convictions).

tions of *any* state or federal statute "relating to" a broad range of controlled substances, specifically including marijuana. Thomas's prior convictions clearly qualify.

We are not blind to Thomas's contention that Section 44–53–370(e)(1)(a) should be read as a self-contained provision, apart from the remainder of Section 44–53–370 and, indeed, the Act itself. Other sentencing provisions within the Act contain language very similar to that found in Section 44–53–470, making it patently obvious that predicate offenses under those sections encompass those of which Thomas has previously been convicted. *See, e.g.*, § 44–53–370(b)(1) (prescribing penalties for third or subsequent offenses involving trafficking in any amount of Schedule I and II drugs and LSD, and specifying predicate offenses as "violation[s] of the laws of the United States or of any state ... relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs"); § 44–53–375(B) (identical language with regard to trafficking offenses involving any amount of ice, crank, or crack cocaine).

Thomas can point to no common-sense rationale, however, explaining why the South Carolina legislature would necessarily treat trafficking in such large quantities of marijuana differently from proportionately smaller quantities of other drugs. Moreover, we note that if the term "subsequent offense" were required to be defined in every section of the Act as a prerequisite to imposing the enhanced penalties for recidivism, Section 44–53–470 would be rendered superfluous; the very existence of the generally applicable definition contemplates that the term will not always be specifically defined. *See Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 462 S.E.2d 291, 294 (1995) (statutes that cover the same subject matter are *in pari materia*, and must be construed together, if possible, as explanatory of each other) (citations omitted).

Finally, it should be noted that, if Section 44–53–370(e)(1)(a)(3) were actually construed in the manner that Thomas

urges to have been reasonable, the penalty for a third or subsequent offense would apply in very few cases. A person twice convicted of trafficking in marijuana under the statute would have already served a cumulative mandatory term of imprisonment of between six and thirty years, based on the one and five-year minimums for the first and second offenses, respectively, and the corresponding ten and twenty-year maximums. *See* §§ 44–53–370(e)(1)(a)(1), (2).

We suspect that in most cases, the actual time served would be substantially closer to thirty years than to six. In light of the realities of age and the probable duration between convictions, it would be the rare recidivist indeed that, under Thomas's construction, would live to serve the potential sentence of fifty-five years imposed on a series of three offenses limited strictly to marijuana trafficking. A defendant in Thomas's shoes, that is, someone who has received relatively lenient treatment for his prior transgressions of the drug laws, seems to us far more likely to have been the type of person that the South Carolina legislature had in mind when it enacted Section 44–53–370(e)(1)(a)(3).

In considering Thomas's fair-notice claim, we heed the words of Justice Rutledge:

> The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose.... Nor does it demand that a statute be given the narrowest meaning; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.

*United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 92 L.Ed. 442 (1948) (reinstating sentence imposed by district court under the Federal Escape Act). We are convinced, as was the Supreme Court of South Carolina, that the alternative interpretation of the Controlled Substances Act proffered by Thomas is unduly strained,

and that it would frustrate the manifest intent of the state's lawmakers.

More importantly, mindful of the limited scope of our review, the state court's implicit conclusion regarding Thomas's fair-notice claim is not an objectively unreasonable application of established legal principles to the facts of this case. The state habeas proceedings therefore pass muster under 28 U.S.C. § 2254(d)(1).

## IV.

Although we agree with the court below that the fair-notice claim was not procedurally defaulted on state collateral review, we cannot agree that Thomas is entitled to federal habeas relief on the merits thereof. The judgment of the district court is accordingly reversed.

*REVERSED.*