608 S.E.2d 843

Henry D. McMASTER, as Attorney General
of South Carolina, Appellant,

v.

The SOUTH CAROLINA RETIREMENT SYSTEM, Adolph Joseph Klein, Jr., James Michael Hicks, Johnny M. Martin, Ellison Lawson, Jr., Troy Phillips, and Edward Thomas Lewis, Jr.,

Of whom Edward Thomas Lewis, Jr. is Respondent.

Henry D. McMaster, as Attorney General
of South Carolina, Appellant,

v.

The South Carolina Retirement System, Adolph Joseph Klein, Jr., James Michael Hicks, Johnny M. Martin, Ellison Lawson, Jr., Troy Phillips, and Edward Thomas Lewis, Jr.,

Of whom Adolph Joseph Klein, Jr. is Respondent.

Henry D. McMaster, as Attorney General
of South Carolina, Appellant,

v.

The South Carolina Retirement System, Adolph Joseph Klein, Jr., James Michael Hicks, Johnny M. Martin, Ellison Lawson, Jr., Troy Phillips, and Edward Thomas Lewis, Jr.,

Of whom Johnny M. Martin is Respondent.

No. 25922.

Supreme Court of South Carolina.

Heard Oct. 6, 2004.
Decided Jan. 10, 2005.
Rehearing Denied March 2, 2005.

364

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Chief, State Grand Jury Sherri A. Lydon, and Assistant Deputy Attorney Robert E. Bogan, all of Columbia, for appellant.

Kristi F. Curtis, of Bryan, Bahnmuller, Goldman & McElveen, LLP, of Sumter, for respondents Lewis and Martin.

John S. Nichols, of Bluestein & Nichols, LLC, of Columbia, for respondent Klein.

Justice MOORE.

We consolidated these three appeals to consider the retroactive application of a lien on retirement benefits pursuant to S.C.Code Ann. § 8–1–115 (Supp.2003) which applies to public officials convicted of embezzling public funds. The trial court found the amount of the lien was limited to the amount of

restitution previously ordered at criminal sentencing. The Attorney General appeals. We reverse.

## FACTS

Respondents Klein, Lewis, and Martin were each indicted by the state grand jury on charges stemming from the embezzlement of funds from Sumter County School District # 17 over a ten-year period. Each respondent pled guilty or was convicted between 1999 and 2000, and each was ordered to pay restitution.[1]

Subsequently, on April 10, 2001, the legislature enacted § 8-1-115 which "created a general lien upon any public retirement or pension plan not governed by ERISA of any public officer, public employee, or any other person who is convicted of an offense involving embezzlement or misappropriation of public funds...." In addition, the legislature provided that this lien was to apply retroactively as well as prospectively. 2001 S.C. Act No. 16, § 6.

The Attorney General then commenced these actions against respondents seeking to enforce liens pursuant to § 8-1-115. In each case, the Attorney General sought a lien in an amount exceeding the amount of restitution previously ordered. The trial court held the lien created by § 8-1-115 is a criminal sanction intended to secure the payment of restitution; the amount of the lien is limited to the outstanding amount of restitution ordered as a part of sentencing; and the lien cannot be foreclosed until the defendant has defaulted on his restitution payments.

## ISSUE

Is the amount of the lien limited to the amount of restitution ordered as part of criminal sentencing?

---

1. Respondent Klein pled guilty on June 1, 1999, to conspiracy to commit embezzlement and ten counts of embezzlement. As part of his sentence, he was ordered to pay restitution in the amount of $180,000. Respondent Lewis pled guilty on May 15, 2000, to criminal conspiracy, misconduct in office, and receiving stolen goods. As part of his sentence, he was ordered to pay restitution in the amount of $45,000. Respondent Martin was convicted on July 20, 2000, of criminal conspiracy, misconduct in office, and receiving stolen goods. As part of his sentence, he was ordered to pay restitution in the amount of $50,000.

## DISCUSSION

### 1. Statutory construction

Section 8-1-115 provides in pertinent part:

(A) There is hereby created a general lien upon any public retirement or pension plan not governed by ERISA of any public officer, public employee, or any other person who is convicted of an offense involving embezzlement or misappropriation of public funds or public property to the private use of himself or any other person, *to the extent of the total loss, damage, and expense* to the State, or to a county or municipality, or to any agency or political subdivision of the State, or to any state, county or municipal agency, any college or university, or to any school, special or public service district within the State, that is authorized by law to perform a governmental function or provide a governmental service.

(B)(1) The presiding judge before whom any public officer, employee, or any other person is convicted of an offense described in subsection (A) must send to the Attorney General and the appropriate retirement or pension plan system a *notice of the lien* showing the name of the person convicted whose retirement or pension plan is subject to the lien created by subsection (A) and the date of the conviction, which is the date upon which the lien attaches. *The presiding judge must set the lien at the time of conviction and the presiding judge's notice of lien must state the amount of the lien.*

(2)(a) Within ten days of the date of conviction, the convicted person's spouse or representative of the convicted person's minor children may file a petition with the presiding judge *requesting the judge to dissolve the lien, in whole or in part, in favor of the spouse or minor children because the spouse or minor children would suffer extreme financial hardship if the lien were to attach.....*

(C) *In addition to any other sentence imposed* upon a person convicted of an offense described in subsection (A) *and taking into account the petition process set forth in subsection (B),* the presiding judge *may require full restitution* of all public funds embezzled or misappropriated and full payment for the conversion, use, and value of public

property appropriated to private use *and may provide for an indeterminate sentence of incarceration or probation, or both, until restitution in full has been made.*

(D) The *Attorney General* is charged with an affirmative duty to recover public funds and property embezzled or converted to private use, or the value thereof, and he or his designee *may bring an action to enforce the lien created by this section at any time up to the death of a person* whose retirement or pension plan is subject to the lien created by subsection (A).

(E) The Attorney General or his designee shall file a *satisfaction and discharge of the lien created by this section after restitution has been made by payment of the amount of the lien in full* or after the death of the person whose retirement or pension plan is subject to the lien created by subsection (A). If the beneficiary of the person whose retirement or pension plan is subject to the lien created by subsection (A) was, himself, convicted of the same offense involving the embezzlement or misappropriation of public funds or public property for which the lien was created, the lien must continue until restitution has been made or until the death of the beneficiary.

(F) The lien created by this section and the action to enforce the lien are *cumulative* and in addition to all other remedies provided by law.

(emphasis added). The legislation enacting this section further provides:

This act is *intended to create remedies to more efficiently recover restitution* due to state and local governmental entities in cases involving embezzlement or misappropriation of public funds or public property to the private use of a public officer or employee, or any other person. As such, *it is remedial legislation intended to be retroactive as well as prospective in its application, so as to attach the general lien created by Section 8–1–115(A)* to any public retirement or pension plan not governed by ERISA of any public officer, public employee, or any other person who has been convicted of an offense described in Section 8–1–115(A). In cases where a living person was convicted of an offense described in Section 8–1–115(A) before the effective date of this act, the lien attaches to their public retirement or

pension plan not governed by ERISA immediately upon approval of this act by the Governor. In cases concluded before the effective date of this act the *Attorney General* or his designee *may send the notice of lien* required by Section 8–1–115(B) to the appropriate retirement or pension plan system instead of the presiding judge.

(emphasis added). 2001 S.C. Act No. 16, § 6.

Under a plain reading of the statute, subsection (A) creates a lien for the total amount of the loss to the government entity. In cases concluded after the statute's effective date, the lien attaches under subsection (B) at the time of conviction and the presiding judge must send a notice of lien to the Attorney General and the retirement system stating the amount. If the case was concluded *before* the statute's enactment and the defendant is still living, the lien is deemed to have attached April 10, 2001, the effective date of the statute. The Attorney General, instead of the presiding judge, then sends the notice of lien to the retirement system.

Under subsection (C), the trial judge may order, in addition to any other sentence, "full restitution . . . *and* full payment . . . *and* . . . an indeterminate sentence of incarceration or probation, or both, until restitution in full has been made."

Subsection (D) authorizes the Attorney General to bring an action to enforce the lien at any time before the defendant's death. The lien is discharged "after restitution has been made by payment of the amount of the lien in full." [2]

Act No. 16 expressly provides that the statute is "intended to create remedies to more efficiently recover restitution due to state and local governmental entities." It is "remedial legislation" that applies retroactively "so as to attach the general lien created by Section 8–1–115(A)." Notably, subsection (C), which provides for restitution enforceable by incarceration, is not retroactive.

The legislature clearly expressed its intent that the statute, at least the provisions regarding a lien, be construed as "remedial." [3] Subsection (D) charges the Attorney General

---

2. If the defendant dies before the lien is enforced, the lien is discharged unless the beneficiary was himself convicted of the same offense.

3. A statute may be in part remedial and in part penal. *Francis v. Mauldin*, 215 S.C. 374, 55 S.E.2d 337 (1949). Subsection (C), which

with "an affirmative duty" to recover funds, including "bringing an action to enforce the lien created by subsection (A)." A lien is a well-established civil remedy—it attaches to property and imposes no personal liability. *See W.M. Kirkland, Inc. v. Providence Washington Ins. Co.*, 264 S.C. 573, 216 S.E.2d 518 (1975); *Williams v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 246 S.C. 396, 143 S.E.2d 797 (1965); *Sexton v. Harleysville Mut. Cas. Co.*, 242 S.C. 182, 130 S.E.2d 475 (1963) (distinguishing imposition of lien and personal liability); *see also* Black's Law Dictionary (8th ed.2004) (defining a lien as a legal right or interest that a creditor has in another's property). The trial court's conclusion that the language of subsection (A) on its face creates a lien as "part of the defendant's criminal sentence" is therefore incorrect.

■ Further, a reading of the statute as a whole does not support the trial court's conclusion that the legislature intended the lien simply to secure the criminal sanction of restitution. Contrary to the trial court's analysis, there is nothing in the statute limiting the lien to the amount of restitution ordered. Subsection (A) expressly states that the lien is for the total amount of loss to the government entity. The only provision limiting the amount of the lien is subsection (B)(2) which allows a reduction for familial hardship.

Subsection (E) expressly provides for satisfaction of the lien "after restitution has been made *by payment of the amount of the lien in full.*" The trial court incorrectly read subsection (E) to impose a limit on the amount of the lien.[4]

In sum, a plain reading of the statute indicates the legislature's intent that the lien imposed under subsection (A) is a civil sanction and not a criminal penalty, and the amount of the lien is not limited to the amount of restitution.

### 2. Double jeopardy and ex post facto

■ The trial court concluded that to allow a lien in an amount greater than the amount of restitution subsequent to

imposes restitution enforceable by incarceration, is penal and is not retroactive.

4. The word "restitution" is used in two different contexts in this statute. In subsection (C), "restitution" is a criminal penalty enforceable by incarceration; however, the word is also used in the more general sense of "restoration" or "compensation" as in subsection (E).

the criminal conviction would violate double jeopardy and ex post facto provisions of the federal constitution. We disagree.

The Double Jeopardy Clause prohibits a subsequent criminal punishment for the same offense. This provision does not apply to a subsequent civil sanction. *United States v. Ursery,* 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *In re: Matthews,* 345 S.C. 638, 550 S.E.2d 311 (2001). Whether a particular punishment is criminal or civil is initially a matter of statutory construction. *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *State v. Price,* 333 S.C. 267, 510 S.E.2d 215 (1998). The court must first ascertain whether the legislature intended to establish a civil sanction. *Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). The legislature's manifest intent will be rejected only where the challenging party provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention. *Id.*

The same analysis applies to determine if a subsequent punishment violates the Ex Post Facto Clause. If the subsequent punishment is civil only, it does not violate either constitutional protection. *Id.; see also In re: Treatment and Care of Luckabaugh,* 351 S.C. 122, 568 S.E.2d 338 (2002) (statute must be criminal or penal in purpose or nature to offend ex post facto laws); *Callahan v. Callahan,* 36 S.C. 454, 15 S.E. 727 (1892) (ex post facto laws relate to criminal and penal proceedings, which impose punishment and forfeiture, and not to civil proceedings which affect private rights retrospectively).

As discussed above, the language of the statute indicates the lien is a civil sanction. We will not reject the legislature's manifest intent to impose a civil sanction unless there is the "clearest proof" that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention. *Seling v. Young, supra.* Under this second prong, if the sanction is actually a criminal punishment, double jeopardy and ex post facto provisions apply.

The United States Supreme Court addressed the issue of a subsequent sanction in *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and adhered to precedent holding that civil forfeitures are not punitive for double

jeopardy purposes. *See United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931). The Court reiterated in *Ursery* several points pertinent to this prong of the double jeopardy analysis: civil forfeitures are *in rem* proceedings and, as such, are distinguishable from fines which are *in personam;* actions *in rem* have traditionally been viewed as civil proceedings; and civil forfeitures serve important nonpunitive goals. These same factors apply to the case at hand and support the conclusion that the lien created by § 8–1–115(A) is a civil sanction not subject to double jeopardy or ex post facto prohibitions.

First, it is well-settled that a proceeding to enforce a statutory lien is *in rem* and not *in personam. See Beatty v. Wittekamp,* 171 S.C. 326, 172 S.E. 122 (1933); *Tolbert v. Buick Car,* 142 S.C. 362, 140 S.E. 693 (1927).[5] Liens, like civil forfeitures, are traditionally civil remedies. *See, e.g.,* S.C.Code Ann. §§ 5–7–300 (tax lien); 5–27–340 (assessment lien); 6–21–330 (bondholders lien); 12–49–10 (tax lien); 15–19–240 (attachment lien); 15–35–810 (judgment lien). The fact that the lien is tied to criminal activity does not render the statute punitive. *Ursery,* 518 U.S. at 267, 116 S.Ct. 2135. Finally, as with civil forfeitures, the lien here serves an important nonpunitive goal: the recovery of public funds.

We find the United States Supreme Court's decision in *Ursery* dispositive here and conclude there is not the "clearest proof" that the legislature intended to impose a criminal sanction contrary to the statute's expressed intent. Accordingly, neither the Double Jeopardy Clause nor the Ex Post Facto Clause prohibits the subsequent imposition of a lien for the total amount of the loss.

**REVERSED.**

---

5. Although the trial judge who sentences the defendant sends the notice of lien, the lien is enforced by an action brought by the Attorney General. § 8–1–115(D).

TOAL, C.J., WALLER and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

I respectfully dissent and would affirm the trial judge's holding that the amount of the lien created by S.C.Code Ann. § 8–1–115 is limited to the amount of restitution ordered at the defendant's prior criminal sentencing.

The General Assembly created this new remedy as an additional means to collect restitution in a criminal matter involving embezzlement or misappropriation of public funds or public property. 2001 Act No. 16, § 6. In situations where the criminal case is already concluded, the Legislature provided only for the giving notice of the lien by the Attorney General or his designee. *Id.* The Act contains no provisions for relitigating the amount of restitution in such a case, and I would not imply one.

In my opinion, nothing in the text of the statute itself supports the conclusion that the amount of restitution can be increased. I read subsection (A) to limit the amount of the lien to that part of the restitution award attributable to the governmental entity's loss, thus providing for situations where the restitution award includes repayment attributable to other losses. Since a restitution award may be only partially subject to the lien, subsection (B) requires the judge to specify the amount subject to this remedy. Further, subsection (C) simply gives the trial judge discretion to set the restitution at less than the full amount due. Finally, section (F) merely makes explicit the judicial system's authority to enforce restitution through traditional means, such as a probation revocation proceeding, and provides that such a revocation proceeding does not preclude an action to enforce the lien.

I do not believe the lien statute permits the Attorney General to seek an increase in the restitution awarded in a case where, as in these cases, the criminal proceedings were concluded prior to the statute's effective date. I would affirm.